486 So.2d 101 (1986)
STATE of Louisiana
v.
Joseph BRENNER, Douglas Guidry, Peggy Ressor, Edward Bierman, Tom Aires Pritchard and Sarah Lancaster.
No. 85-KK-1624.
Supreme Court of Louisiana.
March 31, 1986.
Rehearing Denied May 29, 1986.
*102 John R. Martzell, Martzell & Thomas, F. Irvin Dymond, Dymond, Crull, Castaing & Doskey, Milton E. Brener, Garon, Brener & McNeely, E. Wayne Walker, for defendants-applicants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Kevin Boshea, Mike McMahon, Asst. Dist. Attys., for plaintiff-respondent.
WATSON, Justice.
Defendants were charged with cruelty to the infirm in violation of LSA-R.S. 14:93.3.[1] The trial court denied defendants' motion to quash the indictment on the ground that the statute is unconstitutionally vague.[2] *103 Since the constitutionality of a similar statute, LSA-R.S. 14:93, dealing with cruelty to juveniles, has been upheld,[3] the court of appeal concluded that this statute is not unconstitutionally vague. A writ issued to review the Court of Appeal decision. 477 So.2d 694 (La.1985).
In answer to defendants' motion for a bill of particulars, the State alleged that defendant Peggy Ressor, Administrator of the Provident Nursing Facility,[4] neglected and/or mistreated Bruce Hill and Clarence Bell by failing to assure that: the nursing home was maintained in a good and sanitary manner, necessary health services were performed, the staff was properly trained, there were adequate medical supplies and sufficient staff, the patients' records were correctly maintained, and the patients were "adequately fed, watered and cared for."[5]
It was alleged that Tom Pritchard, Director of Nursing, neglected and/or mistreated the victims in the same particulars and also failed to properly train the staff at the nursing home in correct nursing procedures.
It was alleged that Douglas Guidry, "controller"[6] [sic] failed in the same particulars and also failed to purchase adequate medical supplies for proper treatment and that Edward Bierman, admissions director and physical therapist, failed to provide adequate physical therapy and failed to exercise proper judgment regarding admissions procedures at the facility.[7]
I. Defendants contend that the term "neglect" is unconstitutionally vague.
Statutes are presumed to be valid. Whenever possible, the constitutionality of a statute should be upheld. State v. Rones, 223 La.839, 67 So.2d 99 (1953); Police Jury v. St. Charles Par. Waterworks Dist. No. 2, 243 La.764, 146 So.2d 800 (1962).
Due process requires that a statute punishing an act or omission must give those subject to prosecution a known or ascertainable standard of guilt. Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939). In the case of an omission to act by a person unaware of any wrongdoing, notice of the consequences is essential for due process. Lambert v. California, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957), reh.den. 355 U.S. 937, 78 S.Ct. 410, 2 L.Ed.2d 419 (1958).
Here, the word neglect is preceded by "or" and indicates that the "criminally negligent" qualifying words apply to neglect as well as mistreatment.[8] LSA-R.S. 14:12 defines criminal negligence as follows:
"Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances."
Criminal negligence requires:

*104 "a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances.... It calls for substantially more than the ordinary lack of care which may be the basis of tort liability, and furnishes a more explicit statement of that lack of care which has been variously characterized in criminal statutes as `gross negligence' and `recklessness.' " 5 La.L.Rev. at p. 11.
As supplemented by the general provisions of the Louisiana Criminal Code, the phrase "intentional or criminally negligent mistreatment or neglect" is sufficiently clear in meaning to afford a person of ordinary understanding fair notice of the conduct which is prohibited. See Chambers v. State, 364 So.2d 416 (Ala.Cr.App.1978), writ.den. 364 So.2d 420 (Ala.1978).
II. The phrase "unjustifiable pain and suffering" is also not unconstitutionally vague.
In State v. Comeaux, 319 So.2d 897 (La.,1975) the term "unjustifiable pain and suffering" was found to be sufficiently clear to give a person of ordinary intelligence fair notice of what conduct is criminal.
Because certain medical treatment necessarily results in pain and suffering, the phrase is qualified in the Louisiana statute to make it clear that only the infliction of unjustifiable pain and suffering is prohibited. See State v. Eich, 204 Minn. 134, 282 N.W. 810 (1938) which held that "unjustifiable" presented a sufficiently definite standard to pass constitutional muster, because the word "from common usage has a well known meaning".[9] Also see People v. Curtiss, 116 Cal.App.Supp. 771, 300 P. 801 (1931) which held that "unjustifiable", meaning that which could not be defended or vindicated or which was not exculpable, excusable, or authorizable under the circumstances, was sufficiently certain of meaning to provide a fixed standard of guilt. Also see Bludsworth v. State, 98 N.W. 289, 646 P.2d 558 (1982). Compare State v. Ballard, 341 So.2d 957 (Ala.Cr. App.1976), writ quashed 341 So.2d 962 (Ala.1976) and State v. Meinert, 225 Kan. 816, 594 P.2d 232 (1979) both of which involved the use of "unjustifiable" in different contexts.
In this context, unjustifiable has a definite and ascertainable meaning to those of ordinary understanding. Reasonable certainty is all that due process requires. See People v. Untiedt, 42 Cal.App.3d 550, 116 Cal.Rptr. 899 (1974) and Bludsworth v. State, 98 Nev. 289, 646 P.2d 558 (1982).
Unjustifiable is a term of limitation intended to distinguish that pain and suffering which is an inevitable consequence of care and treatment from that which is not justified by medical needs.
With regard to minors, LSA-R.S. 14:18(4)[10] gives unjustifiable a specific meaning which is absent from this statute dealing with cruelty to the infirm. However, it is significant that the standards and regulations governing facilities for the infirm are much more precise and definite than the standard of care required for children. See LSA-R.S. 40:2001 through 40:2113.5 and 40:2126.
III. Defendants also contend that the statute is unconstitutionally vague in prohibiting criminally negligent neglect of the infirm without establishing who has a duty of care.
The term "infirm" denotes one who is weak and feeble and is generally used in *105 reference to the aged.[11] Like the statute prohibiting juvenile abuse, this statute is intended to shield those who need special protection, that is, those who are infirm and reside in "a nursing home, mental retardation facility, mental health facility, hospital or other residential facility" licensed or operated under the laws of the State of Louisiana.[12]
The word "neglect" in the cruelty to juveniles statute is limited by the Reporter's Comment to those "with legal responsibility towards a child" but there is no similar limitation in this statute. It should be noted that both statutes proscribe not mere neglect but "criminally negligent mistreatment or neglect." Only criminally negligent neglect is punishable.
All nursing homes and other licensed facilities caring for the infirm[13] receive written notification of the state's laws, minimum standards, rules, regulations and orders with which they are expected to comply.[14] Therefore, there is notice of the duties imposed in regard to the residents.[15] Since the personnel are fully apprised of their affirmative duties toward the residents, there is no problem with the due process requirement of notice. Compare Lambert v. California, supra. The problem of an omission to act in the absence of a legal duty, as discussed in 35 Baylor Law Review at 589, is not present in this case.
The duty to refrain from cruelty to the infirm residing in nursing homes or other facilities licensed and operated under the laws of the state extends to all who have a duty in regard to those residents. Those with a duty of care toward the infirm residents of licensed facilities, that is, those who are in some way responsible for their well-being, are required to refrain from criminally negligent mistreatment or neglect which inflicts unjustifiable pain and suffering. See People v. Harris, 239 Cal. *106 App.2d 393, 48 Cal.Rptr. 677 (1966). Determining which of those responsible for the patients are guilty of intentional or criminally negligent mistreatment or neglect is a matter to be determined by the trier of fact in each individual case.
There is a strong public policy in favor of protecting those who are infirm and defenseless from abuse. Louisiana's statute has a lower standard of protection for the infirm than many states with similar statutes. See, for example, Wisconsin, where the jury was charged in State v. Serebin, 119 Wis.2d 837, 350 N.W.2d 65 (1984), that "abuse, neglect or ill-treatment" is "any act or failure to act which causes suffering, misery or physical harm to a person confined." 350 N.W.2d at 76.[16] Louisiana, in contrast, only penalizes intentional or criminally negligent acts or omissions causing "unjustifiable" pain and suffering.
The Louisiana statute gives fair notice of the prohibited conduct. Only when those responsible for care of the infirm inflict unjustifiable suffering, intentionally or with criminal negligence, is there criminal responsibility. See Bowers v. State, 38 Md. App. 21, 379 A.2d 748 (1977), affirmed on other grounds, 283 Md. 115, 389 A.2d 341 (1978).
For the foregoing reasons, the trial court's denial of defendants' motion to quash the indictment is affirmed.
AFFIRMED.
DIXON, C.J., dissents.
CALOGERO, J., dissents. RS 14:93.3 is unconstitutional, vague.
DENNIS, J., dissents.
NOTES
[1] LSA-R.S. 14:93.3 provides:

"Cruelty to the infirm is the intentional or criminally negligent mistreatment or neglect whereby unjustifiable pain or suffering is caused a person who is a resident of a nursing home, mental retardation facility, mental health facility, hospital or other residential facility required to be licensed or operated under the laws of this state or established by the laws of this state.
"Whoever commits the crime of cruelty to the infirm shall be fined not more than ten thousand dollars, or imprisoned for not more than one year, or both."
[2] At least thirteen other states have passed statutes attempting to protect the infirm residents of long term care facilities from abuse or neglect: Alabama, Ala.Code §§ 38-9-7, et seq., "Any person who abuses, neglects or exploits a person in violation of the provisions of this chapter shall be guilty of a misdemeanor and shall, upon conviction, be punished by imprisonment for not more than six months or a fine of not more than $500.00 or both. (Acts 1977, No. 780, p. 1340, §§ 5, 11.)", § 38-9-7(b); Arizona, Ariz.Rev.Stat.Ann. § 46-454; Connecticut, Conn.Gen.Stat.Ann. §§ 19a-517; 19a-518; District of Columbia, D.C. Code §§ 6-2501, et seq.; Florida, Fla.Stat.Ann. §§ 400.102, 400.121; Illinois, Ill.Ann.Stat. ch. 38 § 12-19, "Any person or any owner or licensee of a long term care facility who abuses a long term care facility resident is guilty of a Class 3 felony. Any person or any owner or licensee of a long term care facility who grossly neglects a long term care facility resident is guilty of a Class 4 felony", 38 § 12-19(a); Massachusetts, Mass.Gen. Laws Ann. ch. Ill §§ 72F, et seq.; Minnesota, Minn.Stat.Ann. §§ 609.23, 609.231, "Whoever, being in charge of or employed in any facility required to be licensed under the provisions of sections 144.50 to 144.58, or 144A.02, intentionally abuses, ill-treats, or culpably neglects any patient or resident therein to his physical detriment may be sentenced to imprisonment for not more than one year or to payment of a fine of not more than $3,000, or both.", § 609.231; Missouri, Mo.Rev.Stat. § 198.070, "Any person who knowingly abuses or neglects a resident of a facility shall be guilty of a class D felony", § 198.070, subd. 11; Montana, Mont.Code Ann. §§ 53-5-501, et seq.; "Any individual who purposely or knowingly abuses, neglects, or exploits an older person is guilty of a misdemeanor and upon conviction may be fined an amount not to exceed $500 or be imprisoned in the county jail for a term not to exceed 6 months, or both.", § 53-5-525(2); Nevada, Nev.Rev.Stat. §§ 200.5092, et seq.; Oklahoma, Okla.Stat.Ann. tit. 63 §§ 1-1902, 1-1939, "The owner and licensee are liable to a resident for any intentional or negligent act or omission of their agents or employees which injures the resident. Also, any state employee that aids, abets, assists, or conspires with an owner or licensee to perform an act that causes injury to a resident shall be individually liable.", § 1-1939, subd. A.; Wisconsin, Wis.Stat.Ann. § 940.29: "Any person in charge of or employed in any of the following facilities who abuses, neglects or ill-treats any person confined in or a resident of any such facility or who knowingly permits another person to do so is guilty of a Class E felony...."
[3] State v. Freeman, 409 So.2d 581 (La.1982), cert. den. Freeman v. Louisiana, 459 U.S. 845, 103 S.Ct. 100, 74 L.Ed.2d 90 (1982); State v. Comeaux, 319 So.2d 897 (La.1975).
[4] Gemar, Inc., d/b/a Provident Nursing Home, now doing business as St. Charles Health Care.
[5] Tr. 52.
[6] Tr. 52.
[7] The district attorney's office dismissed charges against Sarah Lancaster on September 12, 1974, and entered a nolle prosequi only as to Joseph Brenner on March 18, 1985, a nurse and physician respectively.
[8] LSA-C.Cr.P. art. 6 provides:

"Unless the context clearly indicates otherwise:
"(1) The word `and' indicates the conjunctive;
"(2) The word `or' indicates the disjunctive;
"(3) When the article is phrased in the disjunctive, followed by the words `or both,' both the conjunctive and disjunctive are intended; and
"(4) The word `and' or `or' between the last two items in a series applies to the entire series."
[9] 282 N.W. at 812.
[10] LSA-R.S. 14:18(4) provides:

"The fact that an offender's conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. This defense of justification can be claimed under the following circumstances:
* * * * * *
"(4) When the offender's conduct is reasonable discipline of minors by their parents, tutors or teachers; or * * *"
[11] Hallman v. State, 113 Tex.Cr.R. 100, 18 S.W.2d 652 (1929) found the word "aged" to have an indefinite meaning but noted that the same defect did not apply to the word "decrepit".
[12] "The abuses to which nursing home operations and their residents are susceptible are well known and documented. `Nursing home patients present particular problems because of several factors: (1) their advanced age (average 82); (2) their failing health (average four disabilities); (3) their mental disabilities (55 percent are mentally impaired); (4) their reduced mobility (less than half can walk); (5) their sensory impairment (loss of hearing, vision or smell); (6) their reduced tolerance to heat, smoke and gasses; and (7) their greater susceptibility to shock.' Nursing Home care in the United States: Failure in Public Policy, Supporting Paper No. 7, Report of the Subcommittee on Long-Term Care of the Special Committee on Aging, United States Senate, 94th Congress, 2d Session, XX (1976), as quoted in Friedman v. Division of Health, 537 S.W.2d 547, 548-49 (Mo.banc 1976); See, also, F. Moss & V. Halamandaris, Too Old, Too Sick, Too Bad: Nursing Home in America (1977); M. Mendelsohn, Tender Loving Greed (1974); C. Townsend, Old Age: The Last Segregation (1971). Only four to nineteen percent of those entering a nursing home depart alive. Nursing Home Access: Making the Patient Bill of Rights Work, 54 J.Urb.L. 473, 474 (1977). More than one half need help in dressing, and more than one in ten needs help in eating. S. Johnson, Nursing Home Receiverships: Design and Implementation, 34 St.L.U.L.J. 681, fn. 1 (1981). One of the startling findings of the Senate subcommittee was that nursing home patients frequently suffer from neglect or are the targets of intentional abuse. Report at 165-73. As one of the symposium commentators states: `Many nursing home patients do not have the physical strength to endure even one episode of abuse or neglect.' Slocum, Patient Abuse Provisions, supra, at 721." Stiffelman v. Abrams, 655 S.W.2d 522 at 529 (Mo.1983). The Missouri standard for neglect is higher than that in Louisiana where compromise language was adopted to reduce the neglect standard from "gross deviation" which would be tantamount to the Louisiana standard of criminal negligence to a standard of neglect presenting an imminent danger to the resident. See 24 St. Louis University Law Journal 617 at p. 647-648.
[13] LSA-R.S. 40:2009.19.
[14] LSA-R.S. 40:2009.2(1).
[15] LSA-R.S. 40:2009.20 B(1) mandates report of known abuse or neglect by any person engaged in the practice of medicine, social services, facility administration, psychological or psychiatric treatment, or any registered nurse, licensed practical nurse or nurse's aid. Those reporting abuse or neglect "other than the person alleged to be responsible for the abuse or neglect" shall have immunity from civil liability because of the report. LSA-R.S. 40:2009.20 C.
[16] Serebin, supervisor of the Glendale Convalescent Center, was convicted of permitting the abuse of neglect of twelve residents, and his convictions on twelve counts of abuse were affirmed.