Dear Mr. Rabalais:
Your request for an Attorney General Opinion was forwarded to me for research and reply. As I understand it, your question is as follows:
Whether state employees aboard United States Coast Guard research vessels could legally be subjected to federally mandated pre-employment and random drug testing?
In a letter to our office, you stated that all crew members aboard United States Coast Guard-licensed research vessels including state employees are being subjected to random drug testing programs as administered by their employers. You also stated that Louisiana Universities Marine Center (LUMC) operates two such vessels. You questioned the legality of this drug testing under both state and federal law. Additionally, you submitted a photocopy of selected provisions of the federal maritime drug testing law.
Pertaining to the legality of drug testing under Louisiana law, as you may know, Louisiana has just recently enacted a new drug testing law, effective January 1, 1991.[1] La. R.S. 49:1001 et seq. focuses on the forensic testing of bodily fluids, primarily urine, for the presence of five illicit drugs: marijuana, opioids, cocaine, amphetamines, and phencyclidine. See La. R.S. 49:1002A.
Important for your agency is that the new law exempts from its coverage any state employees who must comply with mandatory federal drug testing. La. R.S. 49:1001(8) defines "employer" as not including "any person, firm or corporation that is subject to a federally mandated drug testing program." Therefore, by statute, LUMC employees are not covered by the state drug testing law if they are legally required to submit to mandatory testing under federal law.
However, even though the state drug testing law may not apply to your state employees, as a point of comparison, you should be aware that the State Legislature has approved the mandatory, suspicionless testing of public employees in certain circumstances. As it pertains to your opinion request, the State Legislature has approved both pre-employment drug screening and suspicionless random drug screening of public employees who hold "safety-sensitive" or "security-sensitive positions.[2] These terms, however, while not defined by statute appear to echo federal case law.
Recent U.S. Supreme Court decisions indicate that employees who pose a risk to either safety or security may be subjected respectively to either suspicionless testing prior to a promotion to a sensitive position, or immediately following an accident. See National Treasury Employees Union v. Von Raab, 109 S.Ct. 1384 (1989) and Skinner v. Railway Labor Executives Association, 109 S.Ct. 1402 (1989). Based upon these two Supreme Court opinions, as well as other federal court opinions, "safety-sensitive" jobs seem to include those jobs that require a high degree of trust and confidence, or where there is a danger to other employees or the general public. In Skinner the Court spoke of government's compelling interest to subject certain employees to suspicionless testing if they "discharge duties fraught with such risks of injury to others that even a momentary lapse of attention can have disastrous consequences." Skinner, 109 S.Ct. at 1419 (1989). Furthermore, truly sensitive information is top security information, but is not all information that is confidential and closed to public view. See Harmon v. Thornburgh, 878 F.2d 484 (D.C. Cir. 1989), holding Department of Justice employees with top secret national security clearances could be subject to random testing, but rejecting similar testing of prosecutors and employees who had access to grand jury information. Finally, federal courts have upheld drug testing as a prerequisite to employment. See Willner v. Thornburgh, 49 Cr. L. 1024 (D.C. Cir. 1991), holding that DOJ job applicants whose duties do not involve public safety or sensitive information may nonetheless be subjected to warrantless, suspicionless drug testing.
Understandably, because this law is brand new, Louisiana courts have yet to address in any published opinions any possible constitutional challenges, either as it pertains to the federal or state constitutions. Therefore, any opinion of this office as it pertains to Louisiana law must be limited to the fact that the State Legislature has approved of similar drug testing of state employees who are not subject to mandatory federal drug testing. The question of whether or not this testing is actually constitutional remains an unchallenged issue in Louisiana. However, according to Louisiana's jurisprudence, a statute is presumed constitutional until successfully attacked. See State in the Interest of J.A.V., 558 So.2d 214, 216 (La. 1990) and State v. Brenner, 486 So.2d 101,103 (La. 1986). Additionally, the Attorney General's implicit duty is to defend the constitutionality of a statute. See La. R.S. 13:4448
requiring notice to the Attorney General prior to the adjudication of the constitutionality of a statute. Therefore, this office is of the opinion that mandatory pre-employment screening and suspicionless, random testing of employees in "safety-sensitive" or "security-sensitive positions" is permissible under Louisiana law. See Von Raab and Skinner, supra.
As your question pertains to federal law, the latest federal court opinions have approved mandatory drug testing under certain limited fact-patterns. Your letter to our office did not contain any details about the precise job descriptions of the state employees involved. Likewise, several federal decisions have been remanded back to the lower courts for further fact-finding as it concerns the actual duties of the employees who are being subjected to the questioned drug testing programs. Moreover, Louisiana law approves of the random, suspicionless drug testing of public employees, but only if they hold "safety-sensitive" or "security-sensitive positions." Therefore, before our office could offer an opinion as to the legality of such drug testing of all state employees, our office would need to know more details concerning the actual jobs these state employees are actually performing aboard the research vessels. However, assuming the state employees do hold "safety-sensitive" or "security-sensitive positions," recent federal case law indicates that random drug testing may be permissible. See Transportation Institute v. United States Coast Guard1989 WL 222493 (D.D.C.) (unpublished opinion).[3]
Additionally, I'd like to call your attention to the federal chemical testing law pertaining to U.S. Coast Guard — licensed vessels found in 46 C.F.R. § 16.101 et seq. In particular, 46 C.F.R. § 16.105 (b)(2) defines "crewmember" as not including "[s]cientific personnel on an oceanographic research vessel." Moreover, subpart (b)(3) of the same statute excludes from the definition of "crewmember" individuals ". . . who have no duties which directly affect the safety of the vessel's navigation or operations." Therefore, based upon this statute, any state employee who is exempt from the federal drug testing law may therefore be tested pursuant to the new state drug testing law.
In conclusion, based upon the foregoing, state employees may either be subjected to drug testing pursuant to federal law or state law, but not both. Louisiana law provides for drug testing of private or public employees, but only in certain circumstances. The two most applicable circumstances to your agency is testing job applicants or employees who occupy "safety-sensitive" or "security-sensitive positions." With no evidence to the contrary, La. R.S. 49:1001 et seq. is presumed constitutional. Moreover, lower federal courts have been upholding federal drug testing schemes in both pre-employment settings and in situations where there is an adequate demonstration that security or safety concerns mandate random, suspicionless testing. Therefore, absent a showing to the contrary, it is the opinion of this office that state employees of U.S. Coast Guard-licensed research vessels may be subjected to either state or federal drug testing, and such testing is constitutional either as a prerequisite to employment or if the employee occupies a "safety-sensitive" or "security-sensitive position."
If our office can be of further assistance, please do not hesitate to call. Copies of La. R.S. 49:1001 et seq., Von Raab, Skinner, and Transportation Institute have been enclosed for your convenience. Thank you for your patience in awaiting our response to your opinion request.
With kind regards, I am
Sincerely,
 WILLIAM J. GUSTE, JR. Attorney General
 BY: KATHLEEN E. PETERSEN Asst. Attorney General
[1] Your question did not include issues pertaining to unemployment compensation or worker's compensation. Therefore, this opinion is limited to testing under La. R.S. 49:1001 et seq. However, this new drug testing law is in addition to the drug testing previously authorized by Louisiana's unemployment compensation law [La. R.S. 23:1601 (10)] or Louisiana's workers' compensation law [La. R.S. 23:1081]. The unemployment compensation law disqualifies employees from benefits for "misconduct," which includes either on or off the job use of a nonprescribed controlled substance. Additionally, misconduct is presumed if the employee refuses to submit to drug testing. Testing can be for: investigating employee impairment; investigating a workplace accident or theft; maintaining safety of employees or the general public; securing property or information; or maintaining productivity, quality of products or services, or security of property or information. Louisiana's worker's compensation law provides no compensation for an injured employee whose injury is caused by intoxication, and provides only for post-accident testing.
[2] The only other statutorily approved drug testing is: following an accident which occurs during the course and scope of employment; if the employer has a reasonable suspicion that the employee is using illicit drugs; or to monitor employees to assure compliance with a rehabilitation agreement. See La. R.S. 49:1015.
[3] D.C. Circuit Local Rule 11(c) provides that unpublished opinions may not be cited as precedents, but may be referred to "when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant."