742 So.2d 651 (1999)
STATE of Louisiana, Appellee,
v.
Christopher Sneil LEE, Appellant.
No. 32,272-KA.
Court of Appeal of Louisiana, Second Circuit.
August 18, 1999.
Joey W. Hendrix, Shreveport, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul Joseph Carmouche, District Attorney, Catherine Estopinal, Assistant District Attorney, Counsel for Appellee.
Before CARAWAY, KOSTELKA and DREW, JJ.
CARAWAY, J.
A jury convicted the defendant, Christopher Lee, of illegal use of a weapon during a crime of violence (aggravated assault), a violation of La. R.S. 14:94(F). The trial court then sentenced defendant to the mandatory statutory minimum of ten years *652 imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Although Lee assigned five assignments of error,[1] Lee only argues the insufficiency of the evidence. Finding no merit in this assignment, we affirm defendant's conviction and sentence.

Trial Testimony
The defendant resided next door to Debra Johnson, who lived with her 5 year old daughter, Asha, and her mother, Carri Brown, in Shreveport. At trial, Johnson testified that on January 20, 1998, she was inside her house when she heard her mother screaming that Lee said he was going to kill Johnson's son, who was not present at the house. Johnson ran outside and saw Lee running around his front yard and appearing to be hysterical. She asked him what was wrong and tried to calm him down. Johnson then decided to get in her car and find her son's girlfriend to determine what had been happening and why Lee was so upset.
Johnson testified that when she got to the end of her driveway, she observed Lee hold up a gun, point it at her and say, "I'm going to blow this bitch up." Johnson's mother and Asha were outside during these events. When Asha saw the defendant aim the gun at Johnson, Asha began to run toward Johnson. Johnson screamed at her mother to get Asha and hold her back from the area. The defendant then pulled the trigger but the gun jammed. As a result, Johnson had enough time to exit the car, run to a nearby ditch and hide behind a pole located in the ditch. During this period of time, Lee was able to unjam the gun, and Johnson saw the defendant shoot into her car several times. Afterwards, Lee turned around and went inside of his home.
Johnson clearly testified at trial that she was not in the car at the time that Lee actually fired the gun. Johnson stated, however, that she was very afraid when the defendant pulled the gun out and initially aimed it at her in the car and that she saw her life flash before her eyes when he pulled the trigger. She said that even after she got out of her car and ran to the ditch she remained frightened that Lee would turn the gun on her and continue to shoot at her because there was nothing to shield her.
Brown testified that she saw the defendant get a gun from under the front seat of his parked van, heard him yell that he was going to "kill that bitch" and then observed him shoot at her daughter's car five times. Brown agreed that Lee's gun did jam at some point and that Johnson was able to get out of the car and run into the nearby ditch. Asha and an elderly neighbor also confirmed the shooting incident although their testimonies contain minor discrepancies with the other testimony.
Lee testified in his own defense. He admitted that he did fire a gun two or three times into Johnson's car on the day in question. However, it was Lee's testimony that Johnson was never in the car when he aimed at or shot into it. Instead, Lee maintained that Johnson was at least 30 feet from the car. Lee denied that he was attempting to shoot Johnson or anyone else. He testified that he did not intend to scare anyone by shooting at Johnson's car and that no one was standing close enough to the car that there was a risk that they would be hit by a bullet. Lee conceded that is was possible that Johnson was scared when he was shooting at her car and if the situation *653 had been reversed, he would have been afraid of being shot.
Also testifying as a defense witness was another neighbor who claimed to be in Lee's front yard when the shootings occurred. She testified that Lee never waved the gun around or threatened to shoot at anything but the car.
Based on all the evidence, a jury convicted Lee of illegal use of a weapon during a crime of violence (aggravated assault).

Sufficiency of the Evidence
The standard for evaluating sufficiency of the evidence is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find that the state proved all elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Washington, 597 So.2d 1084 (La.App. 2d Cir.1992). For circumstantial evidence to sustain a conviction, upon assuming every fact to be proved that the evidence tends to prove, the evidence must exclude every reasonable hypothesis of innocence. State v. Cotton, 25,940 (La.App.2d Cir.3/30/94), 634 So.2d 937. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Id. Of course, it is always the function of the trier of fact to assess credibility and resolve conflicting testimony. State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir.1992), writ denied, 617 So.2d 905 (La.1993). Where a trier of fact has made a rational determination, an appellate court should not disturb it. Id.; State v. Combs, 600 So.2d 751 (La.App. 2d Cir. 1992), writ denied, 604 So.2d 973 (La. 1992). The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982).
La. R.S. 14:94(A) provides in pertinent part:
Illegal use of weapons or dangerous instrumentalities is the intentional or criminally negligent discharging of any firearm ... where it is foreseeable that it may result in death or great bodily harm to a human being.
In addition, the enhanced provisions of La. R.S. 14:94(F) provide in pertinent part:
Whoever commits the crime of illegal use of weapons or dangerous instrumentalities by discharging a firearm while committing, attempting to commit, conspiring to commit, or soliciting, coercing, or intimidating another person to commit a crime of violence ... shall be imprisoned at hard labor for not less than ten years nor more than twenty years, without benefit of parole, probation, or suspension of sentence.
La. R.S. 14:2(13)(g) lists aggravated assault as a crime of violence.
Aggravated assault is an assault committed with a dangerous weapon, and an assault is defined as either an attempt to commit a battery or the intentional placing of another in reasonable apprehension of receiving a battery. La. R.S. 14:36-37. Thus, the state in alleging that aggravated assault was the crime of violence in this instance was required to prove that either Lee attempted to commit a battery on Johnson or that Johnson was placed in apprehension of being harmed while the defendant was using a dangerous weapon, in this case, a nine millimeter pistol.
Lee's arguments at trial and to this court are that it was not reasonably foreseeable that human life was in danger as a result of his shooting into an unoccupied car and that he did not possess the requisite intent to commit an aggravated assault on Johnson.
In dealing with Lee's arguments, it is important to first evaluate whether the crime of illegal use of a weapon was sufficiently proven to have occurred under La. R.S. 14:94(A) and then to secondly determine whether that crime occurred during an aggravated assault on Johnson. In *654 contrast, the crime of illegal use of a weapon requires merely criminal negligence in the discharge of a weapon while aggravated assault requires general criminal intent.
Articles 10, 11 and 12 of the Criminal Code speak to the elements of both criminal intent and criminal negligence as follows:
§ 10. Criminal intent may be specific or general:
(1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.
(2) General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.
§ 11. The definitions of some crimes require a specific criminal intent, while in others no intent is required. Some crimes consist merely of criminal negligence that produces criminal consequences. However, in the absence of qualifying provisions, the terms "intent" and "intentional" have reference to "general criminal intent."
§ 12. Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances.
La. R.S. 14:10, 11 and 12 (emphasis supplied).
With this guidance, Lee's fit of anger in shooting into Johnson's car in a residential neighborhood was clearly a gross deviation below the standard of care expected to be maintained by a reasonable careful person. Moreover, the jurisprudence confirms that regardless of whether Johnson was in the car or had fled in a direction away from the car, the shooting of a weapon in a residential area where a stray bullet could easily injure or kill one of Lee's neighbors at the scene made it foreseeable that his actions might cause great bodily harm. State v. Mickel, 581 So.2d 404 (La.App. 5th Cir.1991) and State v. Dumaine, 534 So.2d 32 (La.App. 4th Cir.1988), writ denied, 541 So.2d 880 (La.1989)(conviction affirmed, sentence found excessive and remanded for re-sentencing). Accordingly, we find sufficient evidence that the crime of illegal use of a weapon occurred in this instance.
Next, we also find sufficient proof of the crime of aggravated assault. Johnson testified that while sitting in her car, Lee pointed the gun at her and threatened to shoot. This demonstrates a specific criminal intent for placing her in reasonable apprehension of receiving a battery. The assault, which requires merely general criminal intent (see, La. R.S. 14:36 and 14:12), continued thereafter during Lee's tirade in shooting Johnson's car. By such shooting with Johnson standing terrified in the ditch nearby, Lee must have adverted to the fact that Johnson would remain in great apprehension and that such apprehension was reasonably certain to result from his actions. La. R.S. 14:10(2). Accordingly, we find that both the illegal use of a weapon and aggravated assault occurred so that the enhanced crime of illegal use of a weapon during a crime of violence under La. R.S. 14:94(F) was proven beyond reasonable doubt.
Lee's further argument regarding the discrepancies in the witnesses' testimonies such as the location of Johnson in relation to the car does not alter the above analysis and determination of the existence of the material elements of the crime. Moreover, as the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. Where *655 there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Bacon, 578 So.2d 175 (La.App. 1st Cir.1991), writ denied, 93-0694 (La.3/30/95), 651 So.2d 857; State v. Richardson, 459 So.2d 31 (La.App. 1st Cir. 1984). To the extent that inconsistent or conflicting testimony was involved in this case, the guilty verdict indicates that the jury resolved such conflicts in favor of the state's witnesses.

Conclusion
Finding sufficient evidence of the crime, the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The four other assignments of error were the trial court's permitting the state to file an amended bill of information, the trial court's allowing a witness, five years old at the time of the incident, to testify at the trial, the state's cross-examining him regarding a prior misdemeanor conviction and the ineffective assistance of his counsel. Because Lee does not argue these assignments, we hold that they have been expressly abandoned. See URCA Rule 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir.1989); writ denied, 558 So.2d 1123 (La.1989).