968 So.2d 1190 (2007)
STATE of Louisiana, Appellee
v.
Bobby Lee BOOKER, Appellant.
No. 42,596-KA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 2007.
*1192 Sherry Watters, New Orleans, Louisiana Appellate Project, for Appellant.
Paul J. Carmouche, District Attorney, Brady O'Callahan, Dhu Thompson, John Ford McWilliams, Jr., Assistant District Attorneys, for Appellee.
Before STEWART, GASKINS and CARAWAY, JJ.
CARAWAY, J.
A jury found Bobby Lee Booker guilty as charged of cruelty to the infirmed in violation of La. R.S. 14:93.3. He was sentenced to three years at hard labor and now appeals his conviction and sentence. We affirm.

Facts
In August of 2006, Zenobia Bryant, a retired 95-year-old school teacher, shared her Shreveport home with Booker. Ms. Bryant had "adopted" Booker's mother, who died when he was less than a year old. Ms. Bryant was in her late 70's when she began rearing Booker and referred to him as her grandson.
In the days preceding August 8, 2006, Ms. Bryant was hospitalized for dehydration. She had no other relatives in the area and returned to her home with Booker. Her physician arranged home health care for follow-up treatment. On August 7, 2006, home health care nurses attempted to begin treating Ms. Bryant. No one answered her door. On August 8, 2006, at approximately 3:30 p.m., home health care nurses once again attempted to visit but could not gain entrance into the home.
Upon hearing a faint female voice from inside the home, the home health care nurse contacted Ms. Bryant's physician's office. The physician's certified medical assistant, who had befriended Ms. Bryant and helped her in the past, came to the home in an attempt to get Ms. Bryant to answer the door. When she did not, police and firefighters were dispatched to the scene. Ms. Bryant was discovered unable *1193 to get up from her couch, sitting nude in her own waste with roaches crawling on her. She appeared to be incoherent but said she was thirsty and asked for water. She was transported to a hospital and diagnosed with dehydration and malnutrition.
At trial, photographs of the horrible conditions of the home were introduced into evidence. The state also presented the testimony of Shreveport firemen and police who responded and gained entrance into Ms. Bryant's home. The first responders described a home in deplorable condition. They encountered a strong foul smell and a home filled with trash, dirty dishes and clothes strewn around the house. They observed no sheets on the beds and found no fresh food in the house. The room where Ms. Bryant was located had no air conditioning and areas where floorboards were missing created holes in the floor through which small animals could enter and exposed the ground beneath the house. The photographs corroborated this testimony.
During these events, 18-year-old Booker returned home. In a statement to police at the scene, Booker acknowledged that he was the caregiver for his grandmother, he handled all of the bills and was the only person living with Ms. Bryant. He further stated that he and his grandmother had no other family in Shreveport. After his arrest, Booker gave a recorded statement to police and admitted that he paid the bills with Ms. Bryant's money. He asserted that he was doing the best he could and admitted that he needed some help taking care of his grandmother.
Booker was charged by bill of information with cruelty to the infirmed, in violation of La. R.S. 14:93.3. A six-person jury returned a unanimous verdict finding the defendant guilty as charged. Booker's motion for new trial was denied. The trial court found that Booker would be best served by a three-year hard labor sentence and recommended the intensive incarceration program ("IMPACT Program"), also known as boot camp. The defendant was given credit for time served. No motion to reconsider sentence was filed on the defendant's behalf. This appeal followed.

Discussion
In his first assignment of error, Booker argues that the evidence was insufficient to support his conviction. Booker argues that the state failed to prove that he assumed any responsibility for caring for his grandmother, or that he was capable of doing so. He further contends that the state failed to prove that he committed criminally negligent mistreatment or neglect, or that his actions or inactions caused his grandmother any unjustifiable pain, malnourishment or suffering. Rather, Booker contends that the evidence was sufficient to prove only that she was thirsty and possibly "uncomfortable." Booker also argues that the state failed to prove that his remaining in the house where he was reared and with the person who reared him, without any break in the continuity or clear reversal of roles, constituted "assuming voluntary residence," which is another factor used in determining whether a person is a "caregiver" under the statute. Booker concludes that, at most, he committed misdemeanor negligent injury out of ignorance.
Although the record does not reflect that defendant filed a motion for post verdict judgment of acquittal pursuant to La.C.Cr.P. art. 821, this court will consider sufficiency arguments in the absence of such a motion. State v. Henson, 38,820 (La.App.2d Cir.9/22/04), 882 So.2d 670; State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273.
*1194 When issues are raised on appeal both as to the sufficiency of the evidence and one or more trial errors, the reviewing court first reviews the sufficiency claim. This is because the defendant may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if the evidence is constitutionally insufficient. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The standard for evaluating sufficiency of the evidence is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find that the state proved all elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Washington, 597 So.2d 1084 (La.App. 2d Cir.1992). This standard was legislatively adopted in La.C.Cr.P. art. 821 and applies to cases involving direct and circumstantial evidence. State v. Smith, 441 So.2d 739 (La.1983). When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir. 9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747. It is always the function of the trier of fact to assess credibility and resolve conflicting testimony. State v. Lee, 32,272 (La.App.2d Cir.8/18/99), 742 So.2d 651, writ denied, 99-2730 (La.3/17/00), 756 So.2d 326; State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir.1992), writ denied, 617 So.2d 905 (La.1993).
Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Barakat, 38,419 (La.App.2d Cir.6/23/04), 877 So.2d 223; State v. Anderson, 36,969 (La.App.2d Cir.4/9/03), 842 So.2d 1222. To convict a defendant based upon circumstantial evidence, it must exclude every reasonable hypothesis of innocence. LSA-R.S. 15:438; State v. Barakat, supra.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency of the evidence evaluation under Jackson, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a judge or jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, 02-3090 (La.11/14/03), 858 So.2d 422.
La. R.S. 14:93.3 provides in pertinent part:
A. Cruelty to the infirmed is the intentional or criminally negligent mistreatment or neglect by any person, including a caregiver, whereby unjustifiable pain, malnourishment, or suffering is caused to the infirmed, a disabled adult, or an aged person, including but not limited to a person who is a resident of a nursing home, mental retardation facility, mental health facility, hospital, or other residential facility.
B. "Caregiver" is defined as any person or persons who temporarily or permanently is responsible for the care of the infirmed, physically or mentally disabled adult, or aged person, whether such care is voluntarily assumed or is assigned. Caregiver includes but is not *1195 limited to adult children, parents, relatives, neighbors, daycare institutions and facilities, adult congregate living facilities, and nursing homes which or who have voluntarily assumed or been assigned the care of an aged or infirmed person or disabled adult, or have assumed voluntary residence with an aged or infirmed person or disabled adult.
C. For the purposes of this Section, an aged person is any individual sixty years of age or older.
La. R.S. 14:12 defines criminal negligence as follows:
Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances.
The supreme court in State v. Brenner, 486 So.2d 101 (La.1986), discussed the meaning of neglect or "criminal neglect" with reference to the statute on cruelty to the infirmed:
Here, the word neglect is preceded by "or" and indicates that the "criminally negligent" qualifying words apply to neglect as well as mistreatment.
The court then reviewed the definition of criminal negligence set forth in La. R.S. 14:12.
Criminal negligence requires a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances. It calls for substantially more than the ordinary lack of care which may be the basis of tort liability, and furnishes a more explicit statement of that lack of care which has been variously characterized in criminal statutes as "gross negligence" and "recklessness." State v. Brenner, supra. Or, as stated by this court in State v. Baker, 41,325 (La.App.2d Cir.11/1/06), 942 So.2d 677, ordinary negligence does not equate to criminal negligence; thus, the state is required to show more than mere deviation from the standard of ordinary care to prove criminal negligence. State v. Beason, 26,725 (La.App.2d Cir.4/7/95), 653 So.2d 1274, writ denied, 95-1388 (La.10/27/95), 661 So.2d 1359; State v. Wilcoxon, 26,126 (La.App.2d Cir.6/22/94), 639 So.2d 385, writ denied, 94-1961 (La.12/16/94), 648 So.2d 386.
The supreme court in State v. Brenner, supra, discussed the meaning of the phrase "unjustifiable pain and suffering," stating that:
Unjustifiable is a term of limitation intended to distinguish that pain and suffering which is an inevitable consequence of care and treatment from that which is not justified by medical needs.
When we review the definition of this crime, our Supreme Court in State v. Brenner, supra, reminds us that "criminally negligent neglect is punishable." Id. at 105. Although actual mistreatment by an affirmative act against the elderly victim is proscribed, "criminally negligent . . . neglect" for one's failure to act is also punished. In this connection, the crime's definition also addresses this 18-year-old defendant's duty to act. He was a caregiver because he was an adult relative who had "assumed voluntary residence with the aged or infirmed person." He may have also "assumed . . . the care" of the victim, and failed in that duty greatly. Nevertheless, despite defendant's arguments concerning his lack of assumption of a care duty, it is undisputed that he voluntarily resided with the victim and, by that act alone, received a duty under the law. That duty is not lessened in the eyes of our law by the fact that the defendant had recently reached the age of 18 *1196 and his role with his grandmother regarding care had reversed.
Although the length of time of defendant's neglect of the victim is unclear, the record indicates that Ms. Bryant recently came home from the hospital after being treated for dehydration. At 95 years old, she was described by her friend, the medical assistant, as suffering from "early Alzheimers." The record indicates that she had been home at least over two days. Defendant admitted that the victim could not walk upon her return from the hospital. The August heat of the room in which she was found made the squalor and smell unbearable to the arresting officer. There was evidence of an air conditioner in another room of the frame house where the victim was not located. The house was described by the officer as having large holes in the floor, and one of the firemen described rat bites on the victim's feet.
Defendant testified that he had left the house early that morning and returned for two hours at noon. The state did not attempt to show that he had left the victim for any greater length of time. Nevertheless, the victim had suffered through the situation of the heat and the squalor of the unkept conditions and human waste for a lengthy period of time. The defendant, for the most part, did not offer any justification for his failure to affirmatively act. He never testified that the victim refused to eat or drink and that his attempts at care failed. On cross-examination, he admitted the following:
Q. So I just want to make sure I understand you. It's your testimony that after she came back from the hospital she couldn't go to the bathroom so you had diapers on her?
A. Yes, sir.
Q. You were living in this house with her all the time?
A. Yes, sir.
Q. And the only reason you left her there was to go apply for food stamps and pay her bills?
A. Yes, sir.
Q. And she had no air conditioning where she sat?
A. No, sir.
Q. And she was too weak to get up and get her own food and water?
A. Yes, sir.
Q. How did you live with the smell?
A. I don't know, sir.
Q. The cops and firemen weren't lying, right? It smelled to high heaven in there, right?
A. Yes, sir.
In considering the sufficiency of the evidence, we are mindful of Booker's arguments and disturbed by the overall plight of poverty of the parties. Nevertheless, Booker's assertions regarding the reach of this crime's definition are not accurate, and when viewed in the light most favorable to the state, we find the evidence sufficient to support a conviction of cruelty to the infirmed.
It is undisputed that the victim is an aged person under the provisions of La. R.S. 14:93.3 C. The evidence also supports the jury's conclusion that Ms. Bryant endured unjustifiable pain, malnutrition or suffering caused by Booker's criminal negligence. Her doctor testified that Ms. Bryant suffered from dehydration and malnourishment caused by the lack of food and water. He stated that the effects of malnutrition and dehydration are "uncomfortable." The evidence showed that Ms. Bryant had been in the house and unable to answer the door for at least two days. There was no food in the home, other than a small opened can of chili, the age of which Booker could not identify. The photographs depicted no bedding on any of *1197 the beds. The officers testified that the condition of the home did not occur overnight. Upon the officers' entry into the house, Ms. Bryant's thirst was evident as she immediately requested water and held out an empty milk container. The firemen immediately observed the seriousness of her dehydration. Obviously, her hospital diagnosis established that she had not gotten adequate nutrition for an extended period of time.
The defendant was an adult on whom our law placed a duty of care by virtue of his choice of residency with the elderly victim. The heat and filth of his relative's living conditions required him to act to relieve her pain and suffering. To be clear, his duty was not to end the abject poverty of their situation nor was it even to remain in the setting permanently as a caregiver. Nevertheless, having admitted his residency with the victim in the days before her rescue, he grossly neglected even the most basic duty of care that caused needless suffering of the victim and placed her in great danger. He was aware of the other avenues of care that Ms. Bryant had previously received. Therefore, even if he could not adequately provide care, he could not abandon the victim to the conditions in which she was found.
The defendant's failure to take appropriate measures while residing with his grandmother reasonably supports the jury's determination that Booker's conduct was a gross deviation from the standard of care. The evidence, viewed under the Jackson standard, supports the jury's unanimous verdict.
In his second assignment of error, Booker argues that the trial court erred in refusing to give the jury every statutory responsive verdict to the crime of cruelty to the infirmed. The responsive verdicts for the that crime are set forth in La. C.Cr.P. art. 814(A)(58) as follows:
Guilty.
Guilty of attempted cruelty to the infirm.
Guilty of simple battery.
Guilty of assault.
Guilty of negligent injuring.
Not guilty.
After the presentation of evidence, and out of the presence of the jury, the state moved to exclude simple battery and assault from the responsive verdicts in this case. The state argued that it had not alleged that the defendant battered or assaulted the victim, and therefore, those responsive verdicts would be contrary to law and evidence. The trial court agreed:
The State's motion is granted. There is no evidence in my opinion of battery. There is no evidence in my opinion of assault. My duty is to make sure that the jury charge conforms to the evidence that's been adduced.
The defense entered an objection to the ruling. The responsive verdicts given in the charge to the jury and on the verdict form were:
1. Guilty as charged of cruelty to the infirmed;
2. Guilty of attempted cruelty to the infirmed;
3. Guilty of negligent injuring;
4. Not guilty.
During jury deliberations, the jury foreman sent a note to the trial court stating, "Need clear definition of possible verdicts number one and verdict number three." The trial court reread the portions of the written jury charge regarding the verdicts of guilty as charged of cruelty to the infirmed and guilty of negligent injuring. After further deliberation, the six-person jury rendered its unanimous verdict of *1198 guilty as charged of cruelty to the infirmed.
On appeal, Booker argues that the trial court was required to give the responsive verdicts and by failing to do so, deprived the jury of the option of considering a compromise verdict.
La.C.Cr.P. art. 803 provides that when a count in an indictment sets out an offense which includes other offenses of which the accused could be found guilty under the provisions of La.C.Cr.P. art. 814, the court "shall" charge the jury as to the law applicable to each offense. Instructions on permissible verdicts prescribed by law are therefore mandatory. Failure of the trial judge to fully charge the permissible verdicts then applicable to the charge in the indictment requires a reversal of the conviction. State v. Ferguson, 358 So.2d 1214 (La.1978).
Nevertheless, the mandatory nature of these provisions is tempered by La.C.Cr.P. art. 814(C) as follows:
[u]pon motion of the state . . ., the court shall exclude a responsive verdict listed in [La.C.Cr.P. Art. 814(A) ] if, after all the evidence has been submitted, the evidence, viewed in a light most favorable to the state, is not sufficient reasonably to permit a finding of guilty of the responsive offense.
Thus, if there is no evidence reasonably supporting a verdict, then such a verdict may be excluded as a possible responsive verdict. La.C.Cr.P. art. 814(C); State v. George, 26,867 (La.App.2d Cir.4/5/95), 652 So.2d 1382, writ denied, 95-1151 (La.9/29/95), 660 So.2d 855; State v. Harris, 627 So.2d 788 (La.App. 2d Cir. 1993), writ denied, 634 So.2d 851 (La. 1994).
A jury has the prerogative to compromise and render a lesser verdict whenever it could have convicted as charged. State v. Mitchell, 35,970 (La.App.2d Cir.5/08/02), 818 So.2d 807; State v. Bryant, 33,078 (La.App.2d Cir.3/1/00), 754 So.2d 387.
The record before us clearly supports the trial court's exclusion of battery and assault as responsive verdicts because there is no evidence reasonably supporting such verdicts. The jury here maintained the option to compromise and render one of the lesser verdicts listed, which verdicts were supported by the evidence including the misdemeanor charge of negligent injuring. It chose to convict as charged. These arguments are meritless.
In his third assigned error, Booker contends that his three-year hard labor sentence is excessive even though it is within statutory limits because of its length and because the circumstances warrant a less onerous sentencing alternative.
Before sentencing Booker, the trial court noted his lack of prior convictions. However, the court opined that this situation was a "textbook example of an extreme case of cruelty to the infirmed" under the applicable statute, noting that the pictures of the situation in which the victim was left were absolutely deplorable. The trial court reiterated that the victim was found dehydrated, naked and sitting in her feces and urine. It observed that the defendant seemed very detached and completely without remorse "for whatever reason." The trial court stated, "[F]urthermore, I don't think he was living there," finding it inconsistent with the physical evidence.
When a defendant fails to timely file a La.C.Cr.P. art. 881.1 motion to reconsider sentence, the appellate court's review is limited to the bare claim that the sentence is constitutionally excessive. State v. Mims, 619 So.2d 1059 (La.1993); State v. Jones, 41,449 (La.App.2d *1199 Cir.9/20/06), 940 So.2d 61; State v. Duncan, 30,453 (La.App.2d Cir.2/25/98), 707 So.2d 164.
Even so, the record in the instant case shows that the trial court took cognizance of the criteria set forth in La. C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App.2d Cir.2/28/07), 953 So.2d 890. The articulation of the factual basis for a sentence is the goal of La.C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La.C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La. 1982); State v. Hampton, 38,017 (La. App.2d Cir.1/28/04), 865 So.2d 284, writs denied, 04-0834 (La.3/11/05), 896 So.2d 57, 04-2380 (La.6/3/05), 903 So.2d 452. The important elements which should be considered (were considered here even without the benefit of a pre-sentence investigation report) are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La.App.2d Cir.04/22/04), 873 So.2d 747, writ denied, 04-2606 (La.06/24/05), 904 So.2d 728. There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392, writ denied, 00-1467 (La.2/2/01), 783 So.2d 385.
Second, a sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 01-0467 (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992).
The trial judge is given wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Williams, 03-3514 (La.12/13/04), 893 So.2d 7; State v. Thompson, 02-0333 (La.4/9/03), 842 So.2d 330; State v. Hardy, 39,233 (La.App.2d Cir.1/26/05), 892 So.2d 710. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. State v. Cook, 95-2784 (La.5/31/96), 674 So.2d 957, cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. Id.
For the offense, Booker faced maximum sentencing exposure of ten years with or without hard labor. La. R.S. 14:93.3. Thus, the imposed sentence is in the minimum range. In the circumstances of this matter, we cannot find the imposed sentence to be constitutionally excessive.
Further, the trial court recommended the defendant for participation in the IMPACT Program, which it felt would best meet Booker's particular needs for discipline and training. Amelioratory factors, *1200 such as eligibility for early release alternatives, including parole, the intensive incarceration program and diminution of sentence for good behavior, may be considered in gauging excessiveness of a sentence. See State v. Green, 418 So.2d 609 (La.1982); State v. Cook, supra; State v. Laiche, 570 So.2d 168 (La.App. 5th Cir. 1990), writ denied, 576 So.2d 26 (La.1991). Ultimately, when the crime committed against this victim and Booker's punishment are viewed in light of the harm done to society by cruelty to the aged and infirmed, it does not shock the sense of justice.
In his final assignment of error, Booker raises an ineffective assistance of counsel claim. Booker specifically argues that counsel's performance was deficient because he failed to ask for a bill of particulars, pre-sentence investigation report or motion to reconsider sentence. Booker also urges that counsel's performance was deficient in his failure to subpoena Ms. Bryant's medical records, defendant's school records and the food stamp records showing that Booker actually visited the food stamp office on August 8, 2006 and in failing to call Ms. Bryant to testify. Booker argues that counsel should have noticed Booker's demeanor and his limited sixth grade education and requested a competency hearing and psychological evaluation and objected to police officer testimony regarding Booker's lackadaisical attitude. Booker also asserts that counsel's representation was deficient in failing to object to opinion testimony by a fireman regarding the source of alleged bites on Ms. Bryant's feet. Finally, Booker claims that counsel was ineffective in allowing evidence suggesting that he was guilty of fraud and theft to be introduced into evidence.
As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief ("PCR") in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentiary hearing under La.C.Cr.P. art. 930. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Williams, 33,581 (La.App.2d Cir.6/21/00), 764 So.2d 1164. Only when the record on its face discloses sufficient evidence to decide the issue of ineffective assistance when raised by assignment of error should the issue be addressed on appeal. State v. Seiss, 428 So.2d 444 (La.1983).
From our review of these claims of ineffective assistance of counsel, we find that further investigation of these issues would be better accomplished by an evidentiary hearing on post-conviction relief. Accordingly, the claims of this assignment of error cannot be reviewed on the present record.

Conclusion
For the foregoing reasons, Booker's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.