STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-863


STATE OF LOUISIANA

VERSUS

VERONICA MCCOY PULLARD


**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 33895-09
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

**John Foster DeRosier**
**District Attorney**
**14th Judicial District Court**
**P. O. Box 3206**
**Lake Charles, LA 70602-3206**
**(337) 437-3400**
**Counsel for Appellee:**
**State of Louisiana**

**Carla Sue Sigler**
**Assistant District Attorney**
**P. O. Box 3206**
**Lake Charles, LA 70602**
**(337) 437-3400**
**Counsel for Appellee:**
**State of Louisiana**

**Mark Owen Foster**
**Louisiana Appellate Project**
**P. O. Box 2057**
**Natchitoches, LA 71457**
**(318) 572-5693**
**Counsel for Defendant/Appellant:**
**Veronica McCoy Pullard**

**GREMILLION, Judge.**

Defendant was charged by bill of information with cruelty to the infirm, a violation of La.R.S. 14:93.3. Defendant entered an *Alford* plea. In exchange for her plea, the State *nolle prossed* charges of forgery and issuing worthless checks. Defendant was sentenced to serve ten years at hard labor. A motion to reconsider sentence was summarily denied.

Defendant is now before this court on appeal, asserting only that her sentence is excessive. There are no errors patent. For the following reasons, we affirm.

At Defendant's guilty plea hearing, the State established that on or about July 22, 2009, Defendant, a live-in caregiver, criminally neglected and/or mistreated the victim, causing him unjustifiable pain, malnourishment, and suffering. More specifically, Defendant's actions and/or omissions contributed to the victim's malnourishment, cardiac arrhythmia, dehydration, urinary tract and kidney infection, and bedsores. Also, as the victim's caregiver, Defendant held the sole medical power of attorney regarding the victim's access to medical care, medications, adequate nourishment, and a sanitary home environment.

Defendant complains that the maximum sentence was imposed upon a first time offender who was not a professional healthcare provider as generally provided for in La.R.S. 14:93.3. According to Defendant, the victim had a substance abuse problem, and as his girlfriend, she was attempting to help him.

The trial court has wide discretion in imposing a sentence, and a sentence imposed within the statutory limits will not be deemed constitutionally excessive absent a manifest abuse of discretion. *State v. Evans*, 97-504 (La.App. 3 Cir. 10/29/97); 702 So.2d 1148, *writ denied*, 97-2979 (La.4/3/98); 717 So.2d 231.

1

Furthermore, a sentence may only be found to be excessive when it 1) is so grossly disproportionate to the severity of the crime as to shock our sense of justice; and/or 2) makes no measurable contribution to acceptable penal goals; and, therefore 3) is nothing more than needless imposition of pain and suffering. See *State v. Campbell*, 404 So.2d 1205 (La.1981). It is, however, necessary to remember that "[a]s a general rule, maximum sentences are appropriate in cases involving the most serious violation of the offense and the worst type of offender." *State v. Hall*, 35,151, p. 4 (La.App. 2 Cir. 9/26/01), 796 So.2d 164, 169.

The penalty for cruelty to the infirm, first offense, is not more than ten years, with or without hard labor, or a fine of not more than ten thousand dollars, or both. La.R.S. 14:93.3(E)(1). As such, Defendant's ten-year sentence was the maximum possible sentence. She was, however, spared a substantial fine. Additionally, Defendant's sentencing exposure was reduced by her plea agreement which resulted in the dismissal of charges for forgery and issuing worthless checks.

At sentencing, the trial court noted that Defendant was forty-two years old, has a high school education, and has previous employment as a sitter and housekeeper. The trial court also confirmed receipt of Defendant's presentence investigation report (PSI) and that neither party objected to the information contained therein. Additionally, the trial court indicated it received and reviewed correspondence submitted on behalf of the deceased victim by his sister.

Next, the State urged the trial court to impose the maximum sentence, asserting the evidence supported the contention that the victim died as a direct result of the criminally negligent mistreatment of the victim in his home and in the hospital. Defense counsel responded, stating that although Defendant had been arrested before,

2

she had never been convicted of anything. With regard to the victim, defense counsel asserted that he had problems with alcohol and was very difficult to control. He also maintained that Defendant was not a professional caretaker, but was the victim's live-in girlfriend who tried to give the victim medication and help, yet he refused. Although the children of the victim were very upset with the matter, defense counsel suggested that they should have cared for the victim in their homes if they were unhappy with the victim's situation. Lastly, defense counsel averred that any additional incarceration beyond the time already served since her arrest would amount to punitive vengeance on behalf of the family.

Defendant testified that she, too, suffered a loss as a result of the victim's death and was unable to mourn his death due to her incarceration. She maintained that she was not a caregiver, but was his girlfriend. According to Defendant, she met the victim, a severe alcoholic, five years prior, and that he had saved her from an abusive marriage. During the five years she lived with the victim, he became ill in April 2009, and was told by his primary physician that he would die within a year or so if he did not stop drinking. Defendant testified that the victim was admitted to the hospital and rehabilitation several times before he died, and he refused to be admitted into a nursing home. Defendant insisted she did the best she could and would have given her life for him because he had been there for her.

The trial court then questioned Defendant about her statement to the probation officer found in the PSI wherein she reported that she was the victim's caregiver. Defendant denied making the statement, but admitted to stating that she started out as the victim's housekeeper. The trial court then confirmed that Defendant was a

3

certified nurse aide and had worked in various nursing homes and rehabilitation centers.

The victim's daughter, Belinda Jones, testified that Defendant took advantage of her father while she was living with him as a partner, taking his money and medication. According to Belinda, Defendant exhausted all of the victim's resources. Although she had no proof, Belinda suspected that Defendant was tainting something in her father's drink. Belinda also stated that Defendant had the beneficiaries to the victim's insurance policies changed from the names of his children to her name. After taking everything of worth from the victim, Belinda believed Defendant left him there to die. In response, defense counsel asserted that Defendant did not get any insurance money and that no evidence was introduced to show she had taken money from the victim's bank account.

The trial court then considered the mitigating and aggravating facts as follows:

It is noted that if the defendant's been convicted of a felony the Court should impose a sentence of imprisonment if any of the following occur. If there's an undue risk that during the period of a suspended sentence or probation would the defendant commit another offense. It is noted that she has never had any prior convictions, is a first time felony offender, and the Court would have to answer that in the negative. Is the defendant in need of correctional treatment or a custodial environment that can be provided most effectively by her commitment to an institution. Again, without having the history the Court would say a negative, but with regard to the facts of this case the Court would answer in the affirmative, so that could go either way. Would a lesser sentence deprecate the seriousness of the defendant's crime. In that case the Court has answered that also in the affirmative, based on the facts as were reviewed by the Court. Aggravating and mitigating circumstances to be reviewed, the Court finds the following. That the offender's conduct during the commission of this offense manifested deliberate cruelty to the victim. It's apparent that on a number of occasions the victim, who is now the decedent, was found in dire straits, naked and covered with urine and feces and a number of other injuries on his body. The offender knew or should have known the victim was vulnerable or incapable of resistance due to extreme age, also disability, and ill health. Those matters are apparent. The offender offered or has been offered or

4

received something of value for the commission of the offense. The Court is satisfied that there was significant monetary interest with Ms. McCoy in the dealings with the decedent, based on statements from the neighbors in the area, the facts, even the treating physician of the last days of Mr. Jones. It's also apparent that Ms. McCoy has a substance abuse problem, has had one in the past, that's been verified, and it appears that it may not be resolved, based again on doctors' observations at the time. Apparently the incident that gave rise to this led to significant medical treatment for Mr. Jones and within 30 days of the last finding and the basis of the offense for which she has entered her guilty plea passed on. There are allegations, at least basically on statements made by the decedent, that there was physical violence on his person but that's been denied by the defendant, that's not been substantiated, but it is a concern. This offense resulted in significant permanent injury to the victims - to the family, in the loss of their father as well as the Court's impression that the actions of the defendant led substantially to the demise of the victim, and as such, received considerable benefit by the charges that were placed upon her and which she pled guilty under *North Caroline versus Alford*. She has made consistent constant denial of the allegations, however the statements, the other evidence, is substantial, that it is contrary to her position. I find that to be an aggravating [sic]; in fact, there's still denial as well as inconsistency with statements that she's given under the pre-sentence investigation.

In looking at mitigating circumstances, the defendant has no history and has basically led a law-abiding life. She has had a number of run-ins with the law enforcement over the past ten or fifteen years, but doesn't have any convictions, and apparently does have a history of drug abuse that's been established, but, again, no convictions. Is the defendant likely to respond affirmatively to probationary treatment. The Court would have to answer that in the affirmative, nothing [sic] that she's never had the opportunity. If they were not considered they were either deemed insignificant or inapplicable to the instant offense.

At this time the defendant has pleaded guilty to the charge of cruelty to the infirm, a violation of 14:93.3. I think in the 11 years that I've been on the bench, Ms. McCoy, I have never given a first offender the maximum offense - the maximum sentence, however, the facts of this case I think demand that consideration, . . . .

In support of her argument that the maximum sentence is excessive, Defendant refers this court to *State v. Browhow*, 41,686 (La.App. 2 Cir. 12/13/06), 945 So.2d 890, asserting that the facts are similar to those of the instant case. We note, however, that the defendant in *Browhow* was convicted of the lesser offense,

attempted cruelty to the infirm, and was sentenced to the maximum five years at hard labor.[1]  As such, the conviction and sentence are not analogous to the instant case for comparison purposes.

Only a few reported cases involving a conviction for cruelty to the infirm were found in the jurisprudence. The facts of the cases reviewed involved either a professional caretaker working in such capacity or a relative that may or may not have been responsible for the victim's care.  Although Defendant herein alleges she was not working for the victim in a professional capacity, she does not deny that she was his caregiver and had experience in caring for elderly patients as a certified nurse aide.

The lengthiest sentence for a conviction of cruelty to the infirm was imposed in *State v. Echeverria*, 02-2592 (La.App. 1 Cir. 6/27/03), 858 So.2d 632, *writ denied*, 03-2332 (La. 8/20/04), 882 So.2d 580.  In *Echeverria*, the defendant, using both hands, pushed his eighty-four and one-half-year-old grandmother into the kitchen furniture.  The victim reported that the defendant arrived at her home intoxicated and called her names before getting in her face and pushing her down.  The victim suffered from soreness and bruises from the incident.  Photographs of the victim introduced into evidence showed large bruises on the right side of her back and on her right hip.  Following a bench trial, the defendant was convicted of cruelty to the infirm and sentenced to five years at hard labor.  After his adjudication as a third felony habitual offender, his sentence was vacated, and he was then sentenced to seven years at hard labor.  On appeal, the court held that the sentence imposed was

---

[1]The defendant was also convicted of simple battery for slapping another resident and was sentenced to six months imprisonment to be served consecutively to her sentence for attempted cruelty to the infirm.

6

not unconstitutionally excessive or grossly disproportionate to the severity of the offense.

In *State v. Booker*, 42,596 (La.App. 2 Cir. 10/31/07), 968 So.2d 1190, *writ denied*, 07-2295 (La. 4/25/08), 978 So.2d 364, the defendant was sentenced to three years at hard labor for cruelty to the infirm. The defendant was living with his ninety-five-year-old grandmother who was found home alone by emergency personnel dispatched to the home when she failed to answer the door. Upon forced entry, the victim was discovered sitting nude in her own waste with roaches crawling on her, unable to get up from her couch. She was then transported to a hospital and diagnosed with dehydration and malnutrition. Photos of the home introduced at trial depicted a home in deplorable condition. The defendant acknowledged to police at the scene and in his subsequent statement that he was the victim's caregiver. He paid the bills with the victim's money and was the only person living with the victim. Also, the defendant and the victim had no other family in the area. The defendant asserted he was doing the best he could and admitted that he needed some help caring for the victim. On appeal, the court noted that the sentence imposed was in the minimum range and concluded it was not excessive viewed in light of the harm done to society by cruelty to the aged and infirm.

In two cases, the defendants received suspended sentences. First, in *State v. Pratt*, 573 So.2d 607 (La.App. 2 Cir. 1991), the defendant was convicted of three counts of cruelty to the infirm and was sentenced on each count to three years at hard labor, to be served concurrently. The sentences were suspended, and the defendant was placed on supervised probation for three years. The defendant was working at a nursing home as a nurse's aide where she physically assaulted three patients,

7

repeatedly slapping and pinching them. The three female victims were ages seventy, eighty-four, and eighty-nine years old. The victims sustained bruising and/or swelling to their faces, and one victim was choked. Although the defendant had no prior felony convictions, the trial court found aggravating the fact that she denied the occurrences despite the testimony of co-workers who witnessed the abuse. Also, the defendant frequently used alcohol while on the job. Although there were no lasting physical injuries to the victims, the trial court concluded that the offenses were serious as they both threatened and caused serious harm. On appeal, the court did not find the sentences to be an abuse of the trial court's discretion.

Also, in *State v. Baker*, 41,325 (La.App. 2 Cir. 11/1/06), 942 So.2d 677, the defendant was convicted of cruelty to the infirm and sentenced to two years at hard labor, suspended, and was given three years of probation.[2] Defendant was employed as a certified nurse aide at an assisted living facility and nursing home for veterans. The victim became angry with the defendant when she tried to rouse him from his sleep. He also became upset with the defendant and then argued with her when she placed him in his wheelchair in a hard manner. During the argument, the victim had his hand in front of the defendant's face and called her a "black b - - - h." The defendant then grabbed the victim's hand and bent his fingers backwards. When the victim told the defendant to stop, she released his hand. The victim's hand was later found to be swollen and bruised. The defendant did not challenge her sentence on appeal.

---

[2]The defendant was also convicted of a misdemeanor charge of negligent injury and sentenced to two years at hard labor to run concurrently with her sentence for cruelty to the infirm. The conviction was reversed on appeal.

Lastly, the shortest sentence imposed for cruelty to the infirm was found in *State v. Scott*, 582 So.2d 864 (La.App. 5 Cir.), *writ denied*, 584 So.2d 1171 (La.1991). The defendant in *Scott* was convicted of four counts of cruelty to the infirm and was sentenced to one year in parish prison on each count, the sentences to run consecutively, and fined $10,000, plus costs. The defendant worked at a home for mentally retarded individuals as an Assistant Home Manager. During his employ, two of the defendant's clients were found to have burns caused by an electric iron. Also, there was testimony that the defendant hit, pushed, and tied up some of his clients, in addition to physical evidence of injurious marks. The defendant did not challenge his sentences on appeal.

Defendant's sentence in the instant case, the maximum possible sentence, is twice that of the longest sentence imposed for cruelty to the infirm found in the jurisprudence. *Echeverria*, 858 So.2d 632. Only the enhanced sentence of seven years imposed in *Echeverria* compares to the maximum sentence imposed upon Defendant, a first felony offender.

There is, however, a significant distinction between the instant case and the related jurisprudence. First, the instant case involved the death of the victim, an aggravating factor not seen in the cases discussed herein. Indeed, the trial court found that, "the actions of the defendant led substantially to the demise of the victim."

The trial court also noted aggravating factors unique to this case. First, the trial court found that Defendant clearly knew or should have known the victim was vulnerable or incapable of resistance due to his extreme age, disability, and ill health. This finding is further supported by the fact that Defendant is a certified nurse aide,

9

a contradiction to Defendant's argument that she is not a professional healthcare provider.

Regardless of Defendant's training as a certified nurse aide, the provisions of La.R.S. 14:93.3 apply to anyone, including a caregiver. A caregiver is defined in La.R.S. 14:93.3 as follows:

> [A]ny person or persons who temporarily or permanently is responsible for the care of the infirmed, physically or mentally disabled adult, or aged person, whether such care is voluntarily assumed or is assigned. Caregiver includes but is not limited to adult children, parents, relatives, neighbors, daycare institutions and facilities, adult congregate living facilities, and nursing homes which or who have voluntarily assumed or been assigned the care of an aged or infirmed person or disabled adult, or have assumed voluntary residence with an aged or infirmed person or disabled adult.

Accordingly, the trial court was not required to conclude that Defendant was a professional healthcare provider to justify imposition of a maximum sentence.

The trial court also found aggravating that a significant monetary interest was involved in Defendant's relationship with the victim. Along those same lines it is important to note that Defendant's sentencing exposure related to misusing the victim's money was essentially wiped away by virtue of the plea agreement. Lastly, the trial court found most offensive Defendant's continued denial of the allegations despite the evidence contrary to her position.

This is a severe sentence. However, it is clear to this court that the trial court did not impose it lightly. We are moved by the trial court's divulgence that this matter represents the first occasion wherein it has imposed a maximum sentence on a first time offender. Therefore, in light of the victim's death and the other aggravating factors identified by the trial court at sentencing, this court finds that the trial court did not abuse its discretion when it imposed the maximum sentence.

10

## RULING

Defendant's sentence is affirmed.