STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

19-38


STATE OF LOUISIANA

VERSUS

GERRELL WASHINGTON



**********

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2017-CR-200824-A
HONORABLE KERRY L. SPRUILL, DISTRICT JUDGE

**********

**D. KENT SAVOIE**
**JUDGE**

**********

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and D. Kent Savoie, Judges.




**AFFIRMED.**

**Paula C. Marx**
**Louisiana Appellate Project**
**Post Office Box 82389**
**Lafayette, Louisiana 70598-2389**
**(337) 991-9757**
**COUNSEL FOR DEFENDANT/APPELLANT:**
 **Gerrell Washington**

**Hon. Charles A. Riddle, III**
**District Attorney**
**Twelfth Judicial District Court**
**Emily Edwards Bertholl**
**Assistant District Attorney**
**Post Office Box 503**
**Marksville, Louisiana 71351**
**(318) 240-7123**
**COUNSEL FOR APPELLEE:**
 **State of Louisiana**

**SAVOIE, Judge.**

On June 14, 2017, Defendant, Gerrell Washington, was charged by bill of information with cruelty to persons with infirmities, a violation of La.R.S. 14:93.3.[1]  By written motion filed on January 11, 2018, Defendant waived his right to a jury trial.[2]  On July 19, 2018, Defendant was tried by a bench trial on both the present charge (cruelty to persons with infirmities) and a charge filed in a separate docket number (second degree battery).[3]  The trial court found Defendant guilty of both charges.  The trial court ordered a Pre-Sentence Investigation (PSI) report and set sentencing.

On September 17, 2018, the trial court sentenced Defendant on the cruelty to persons with infirmities conviction to ten years in the Department of Corrections, with all ten years to be served without benefit of parole, probation, or suspension of sentence.  On the second degree battery conviction, the trial court imposed a sentence of eight years in the Department of Corrections, to run concurrently with the sentence imposed for cruelty to persons with infirmities.  Defense counsel asserted an objection and subsequently filed a written Motion for Reconsideration, alleging the sentences imposed were excessive.  The trial court set the Motion for

---

[1] We note that the bill of information refers to the offense as "cruelty to the infirmed."  In 2014, the name of the offense was changed from "cruelty to the infirmed" to "cruelty to persons with infirmities."  2014 La. Acts No. 811 § 6.  We have used the current name of the offense in this opinion.

[2] The written Motion to Waive Jury filed by Defendant's counsel and signed by Defendant refers to Defendant's charge as "aggravated battery," instead of "cruelty to persons with infirmities," the charge at issue in the present case.  However, it is clear Defendant intended to waive his right to a jury in the present case since the motion contains the docket number in the present case, and the trial court discussed the waiver with Defendant in open court.

[3] In a separate docket number, Defendant was charged with second degree battery arising out of the same incident.  Although the record does not contain a motion to consolidate, Defendant was tried in the same bench trial on both charges.  Defendant's appeals of both convictions are presently before the court in separate docket numbers specifically, cruelty to persons with infirmities under appellate docket number 19-38 and second degree battery under appellate docket number 19-39.

Reconsideration for hearing on October 16, 2018. After hearing argument, the trial court denied the Motion for Reconsideration.

Defendant's Motion and Order for Appeal was granted on September 24, 2018. Now before the court is a brief filed by Defendant alleging one assignment of error as to the excessiveness of the sentence imposed for cruelty to a person with an infirmity. For the reasons that follow, we affirm Defendant's sentence.

## FACTS

On May 1, 2017, Defendant, a forty-three-year-old inmate, was working at the Bunkie Senior Center as part of a work release program. The victim, Ruddio Rico, age sixty-eight at the time of the incident, worked with his wife as a volunteer at the center. At trial, the victim explained that earlier that day his wife told him Defendant "cussed" at her and threatened her when she told him not to pressure wash near the cracks of the windows. According to the manager of the Bunkie Senior Center, she saw the victim walk up to Defendant and tell Defendant to never call his wife names again. The victim testified that he also told Defendant that if he ever had a conflict with his wife again, he would send Defendant back to jail. When the victim turned around and walked back to his truck, Defendant followed and asked what the victim was going to do about it. The victim turned around to face Defendant, and Defendant hit the victim in the face. The victim fell backward, and Defendant began "stumping" the victim's hands and kicking the victim in the back. Defendant stopped beating the victim when the manager yelled at Defendant to go inside. The manager estimated the attack lasted about five minutes.

According to the manager, the victim was bleeding from his face, nose, eyes, and hand, leaving a pool of blood where he lay. The manager did not see any

2

weapons on the victim and did not hear the victim make any threats to Defendant. When asked if the victim yelled during the attack, the manager replied, "No, I mean it just happened so fast, he just turned around and Gerrell hit him with his fist."

The victim described the beating as follows:

A.    He hit me right here in the eye.

Q.    And you've indicated just for the record, your right eye?

A.    Right eye, it's a prosthetic eye right now.  And then hit me on the nose and then I have a cut on here right here.  And then I fell to the ground unconscious he put his hand . . . or his foot over my left hand . . . .  And he was smashing down on my hand with foot [sic] and he was kicking me in the back several times and he kicked me in the head several times.

The victim also testified that he was 99% unconscious after he was hit.  The victim described the pain he felt as being worse than his wound in Vietnam.  The victim was transported by ambulance to Bunkie General Hospital, where he was then transported by helicopter to Shreveport.  When asked to describe the victim when she saw him at the hospital, the victim's wife stated, "He was real bad off, he was bleeding from the eye and his hand and then he was . . . his eye was all bruised and it was horrible."  The victim stayed at LSU Medical Center in Shreveport for about seven days.

As a result of Defendant's attack, the victim lost his right eye and some teeth.  The victim continues to suffer from blurred vision in his left eye, memory loss, and headaches.  As a result of injuries to his left hand, the victim underwent two surgeries and still suffers from pain in his hand.  The doctor in Shreveport initially tried to save the victim's right eye but a few days later decided it was best to remove it.  The victim did not have facial reconstruction surgery since it would

have interfered with other problems. After counsel noted the victim was currently walking with a cane, counsel asked if the victim walked with a cane on the day of the incident. The victim responded:

A. No.

Q. Is your reason for walking with a cane a direct result of the beating?

A. No [sic] a direct result with the beating because I had tremendous back surgery which you cannot return for sure sure [sic] if that indicated some of the cause.

In his defense, Defendant presented the testimony of one officer regarding a voluntary statement he received from an eye-witness. The witness stated that he saw "a white male elderly man push Gerrell, Gerrell then punched him in the face, the police were then called." Additionally, the victim's wife testified that when she told her husband (the victim) about her run-in with Defendant, her husband said that it did not sound like Defendant. Defendant testified that on the day in question, he was having an issue with the victim's wife trying to supervise him. When Defendant discussed the issue with his real supervisor, the victim's wife got upset and left. Shortly thereafter, Defendant testified, the victim drove up, slammed his car door, walked up to Defendant, and pushed Defendant in the chest. The victim threatened to "plant" Defendant "in the ground" if he ever called his wife a "b-i-t-c-h" again. Defendant testified that the victim followed him and tried to grab his shirt. Defendant further testified that he automatically "went on defense" and hit the victim. Defendant denied jumping or "stumping" the victim.

Defendant testified that he was approved for the work release program because of his "outstanding disciplinary jacket." According to Defendant, he had "no violence in [his] jacket" in almost twenty years of incarceration. On cross-

4

examination, Defendant testified that he participated in the sport of boxing while in prison.

After hearing the evidence presented, the trial court found Defendant guilty of both offenses, ruling as follows:

BY THE COURT:

I thank you for your presentations of evidence here today. And really in two separate charges and I will address them separately.

Second Degree Battery is defined by Louisiana Revised Statute 14:34.1, second degree battery is a battery when the offender intentionally inflicts serious bodily injury. The evidence presented here today it is abundantly clear that the State met it's [sic] burden of proof the defendant is guilty as charged of second degree battery. The victim Mr. Ruddi Rico sustained very severe injuries to his left eye and lost the left eye, has a prosthetic eye today, severe damage to his right vision. He has damage to his face, damage to his nose and lots of bleeding, lots of pain, loss of teeth and has memory problems all as a result of the and as a consequence of the beating that was inflicted upon him by Gerrell Washington on May 1st, 2017.

This court has not considered if a defense to the charge that anybody exercised any authority over anybody, the series of events are most regrettable that occurred that day. Regrettable as they may be the consequence and the results that occurred are clear violations of the criminal statute for which there has been no defense shown in this courtroom here today.

Accordingly I find the defendant guilty as charged of Second Degree Battery based upon the events and testimony of the victim, Ms. Sherry Guillory and Officer Lee who all testified about the events that occurred that day.

As far as the next charge Cruelty to Persons with Infirmities, that statute and I'm just going to read the words that apply to today's case and it says '[c]ruelty to persons with infirmities under 93.3 of the criminal code is the intentional mistreatment by any person whereby unjustifiable pain is caused to a person who is aged.

Aged is defined in Section C as a person or individual 60 years of age or older. It is without doubt that the victim of this crime was 68 years old on May 1st, 2017.

The State has proven each and every element of this offense beyond a reasonable doubt as to each element charged in this crime, in

both crimes, accordingly I find the defendant guilty as charged to both crimes by evidence beyond a reasonable doubt.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find no errors patent present.

## ASSIGNMENT OF ERROR

Defendant asserts the maximum ten-year sentence is excessive for the cruelty to persons with infirmities offense because Defendant was not the victim's caretaker, and Defendant felt threatened by the victim's verbal confrontation. The penalty range for cruelty to persons with an infirmity is the following:

> E. (1) Whoever commits the crime of cruelty to any person with an infirmity, adult with a disability, or person who is aged shall be fined not more than ten thousand dollars or imprisoned with or without hard labor for not more than ten years, or both. At least one year of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence when the act of cruelty to persons with infirmities was intentional and malicious.

La.R.S. 14:93.3. Although the trial court did not impose a fine, the trial court imposed the maximum term of imprisonment and the maximum amount of time to be served without benefits.

In the same sentencing proceeding, the trial court sentenced Defendant for second degree battery to eight years in the Department of Corrections, to run concurrently with the sentence imposed for cruelty to persons with infirmities. Like the penalty for cruelty to a person with an infirmity, the trial court did not impose a fine for second degree battery but imposed the maximum term of imprisonment.

The analysis for an excessive-sentence claim is well-settled:

6

Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99), 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00) [765 So.2d 1067]; 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983) ), *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, a panel of this court observed that:

> While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, 958[, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996)].

*State v. Soileau*, 13-770, 13-771, pp. 4-5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005-06, *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261. "[M]aximum sentences 'are reserved for . . . the most serious violations of the charged offense and for the worst kind of offender.'" *State v. Cozzetto*, 07-2031, p. 2 (La. 2/15/08), 974 So.2d 665, 666 (quoting *State v. Quebedeaux,* 424 So.2d 1009, 1014 (La.1982)).

*Sentencing Hearing*

The victim's wife gave the following statement at sentencing:

> What made that day any different than any other day because he took orders from (INAUDIBLE) along with all the others in the center, he mentioned he never had a problem. I prayed to God to give me strength to forgive him but I can't. My husband is a hundred per cent [sic] disabled vet and was trying to help the center get a new face lift. He destroyed my husband's life and our entire family. My husband loves to hunt and fish he took his sight, the use of his left hand, his memory loss, hearing and he broke a lot of his teeth. He has to have someone with just about all the things because it's hard for him to get around. He has to have someone with him all the time. I now pray that this court has . . . take his life and sentence him to life without the possibility of parole and credit him for time served. If he doesn't get life please give him the maximum sentence without possibility of parole. This person is a repeat offender and if released he will end up killing someone due to his violence.

The trial court stated the following when imposing the sentence in the present case:

> The Court considers the following sentencing guidelines under Article 894.1 of the Code of Criminal Procedure pertinent to these proceedings; to wit:
>
> 1. there is an undue risk that during the period of a suspended sentence or probation that the defendant may commit another crime;
>
> 2. the defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution; and,

8

3.  a lesser sentence will deprecate the seriousness of the defendant's crime.

Additionally, the Court considers the following grounds provided in Code of Criminal Procedure Article No.: 894.1, relevant to the sentencing of this defendant, to-wit:

1.  the offender's conduct during the commission of the offense manifested deliberate cruelty to the victim;

2.  the offender knew or should have known that the victim of the offense was particularly vulnerable or incapable of resistance due to advanced age, disability or ill health;

3.  the offense resulted in a significant permanent injury to the victim; and,

4.  the offender used actual violence in the commission of the offense.

A pre-sentence investigation report was prepared by Probation and Parole Officer, Kristin Brouillette, and same has been filed of record in these proceedings. Gerrell Washington is classified as a fourth felony offender with a previous conviction for aggravated battery on 5/1/1995 in Terrebonne Parish, Louisiana (original charge was second degree battery). The defendant's record further bears a conviction for armed robbery on 4/1/1999 which also occurred in Terrebonne Parish, Louisiana. Gerrell Washington has a pre-trial date scheduled for 10/30/2018 and a trial date scheduled for 11/13/2018 for the pending charge of battery of a correctional facility employee in Allen Parish, Louisiana (date of alleged offense 6/06/2018). The defendant's criminal history reflects a propensity for violent crime and a felony record with offenses that have not been considered for multiple offender adjudication (see pre-sentence investigation report).

The Court has taken into consideration the severity of the beating inflicted upon the victim, Ruddie Rico, and the permanent physical injury that has resulted to him. The Court has further considered the great pain and suffering that Mr. Rico has endured by virtue of the defendant's criminal conduct, the significant cost of medical expenses attendant thereto, the need for continuing and future medical treatment for Mr. Rico and the permanent loss of eyesight suffered by him. The Court recognizes that under the factual situation presented at bar that the defendant may have felt personal anger from the circumstances arising in his work release environment. However, those personal feelings do not justify by any means whatsoever the cruel and severe beating inflicted upon the physical-ill [sic], sixty-eight-year-old victim. As required by the cruelty to the infirmed statute (La.R.S. 14:93.3), the evidence presented at trial supports a

9

finding beyond reasonable doubt that the victim, Ruddie Rico, was a person with infirmities and of advanced age, who was subject [sic] to intentional mistreatment by Gerrell Washington that resulted in unjustifiable pain and suffering to Mr. Rico.

. . . Without any question and beyond any reasonable doubt, the trial evidence supports a finding that the acts of cruelty inflicted upon the victim, Ruddie Rico, were both intentionally and maliciously committed by Gerrell Washington. Accordingly, the defendant is ordered to serve ten (10) years in the custody of the Department of Corrections with the State of Louisiana with all ten (10) years of the sentence imposed being without benefit of probation, parole or suspension of sentence; the defendant is further awarded credit for time served since arrest for this offense.

Second degree battery is defined as follows, to-wit:

"La.R.S. 14:34.1:  Second degree battery

A.   Second degree battery is a battery when the offender intentionally inflicts serious bodily injury; however, this provision shall not apply to a medical provider who has obtained the consent of the patient."

Serious bodily injury is defined as a bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death. The evidence presented at trial supports a verdict of guilty to the charge of second degree battery as the battery committed by the defendant, Gerrell Washington, upon the victim was intentional and the victim suffered serious bodily injury. Serious bodily injury in this case involved extreme physical pain, protracted and obvious disfigurement and impairment/permanent loss of eyesight for Mr. Ruddie Rico with a need for a prosthetic eye.

. . . Accordingly, and because of the intentional infliction of such extremely serious bodily injury upon the victim in this case, the Court imposes a sentence of eight (8) years in the custody of the Department of Corrections for the State of Louisiana, with credit for time served since arrest for this offense, said sentence to run concurrent with the sentence imposed this date in Criminal Docket No.: 200,824 on the charge of cruelty to the infirmed.

At the hearing on the motion to reconsider sentence, the trial court denied

the motion, reasoning as follows:

BY THE COURT:

All right. And I thank you both. I do appreciate the opportunity to revisit and reconsider the situation. If memory serves me correctly and I think it does I think this particular case involved some very, very serious injuries, in fact permanent injuries which the victim lost eye sight and has underwent surgeries in fact multiple surgeries and large hospital bills and his life is forever . . . it will never be the same; 68 years or whatever age he was. I mean his life is impacted so negatively and the injury to him was so great his life will never be the same.

I just under the circumstances I thought the court was very lenient, very gracious and very kind when I did not impose consecutive sentences for what happened. And although I had the discretion under the law and could have those sentences run consecutively, chose not to run them based on the circumstances, it all alleged[ly arose] out of the same occurrence and the same situation.

I have given consideration to that fact in the initial sentencing and I did not overlook the fact that it involved a single event and a single hitting as has been argued here today. I find that the motion is without merit and there are no legal grounds for the court to grant the reconsideration, in fact I do think full benefit was granted and my latitude begs the positions that the event was a singular event and a single hitting. When I imposed sentence and made sentence run concurrent in this case instead of consecutive, even in light of the serious nature of the injuries and the permanent injuries that were inflicted as a result of the beating that was inflicted in this case.

The Motion is denied.

*Defendant's Argument in Brief*

Defendant argues the trial court's imposition of the maximum sentence for cruelty to a person with an infirmity was excessive in this case. Defendant claims he was afraid of the victim and hit the victim only once after the victim pushed him and threatened to "plant him in the ground." Defendant further argues that this case is "not the typical case involving abuse by one assigned to the care of a helpless person." According to Defendant, the intent of the original enactment of La.R.S. 14:93.3:

[W]as to shield those who need special protection, that is, those who are infirm and reside in "a nursing home, mental retardation facility,

11

mental health facility, hospital or other residential facility" licensed or operated under the laws of the State of Louisiana.

We note that Defendant is not challenging the sufficiency of the evidence as to his conviction for cruelty to a person with an infirmity.

Defendant further argues that the trial court failed to give sufficient weight to the victim's threat "to plant [Defendant] in the ground," especially since the victim was a hunter. Additionally, Defendant claims he had a non-violent prison record for almost twenty years prior to the offense at issue. Finally, Defendant asserts he was not the victim's caretaker, this was not a case of on-going abuse, Defendant is remorseful, and the action will not likely reoccur.

Defendant cites several cases in which a lesser sentence was imposed for the offense of cruelty to persons with infirmities. In *State v. Echeverria*, 02-2592 (La.App. 1 Cir. 6/27/03), 858 So.2d 632, *writ denied*, 03-2332 (La. 8/20/04), 882 So.2d 580, the defendant was sentenced to seven years at hard labor as a third habitual offender for cruelty to the infirmed. Echeverria "shoved his eighty-four-and-one-half-year-old grandmother into kitchen furniture with both hands, thereby causing her unjustifiable pain and bruises." *Echeverria*, 858 So.2d at 636. Although the present Defendant received a more severe sentence and was not adjudicated a habitual offender, Defendant does have a criminal history of felonies, and the injuries caused by Defendant were more severe than the injuries caused by Echeverria.

Defendant also cites *State v. Pullard*, 10-863 (La.App. 3 Cir. 2/9/11), 56 So.3d 1205, a case in which this court upheld the maximum term of imprisonment for cruelty to the infirmed - ten years at hard labor. Defendant argues *Pullard* is distinguishable since the victim in *Pullard* died. Notably, at the time Pullard

committed the offense, the penalty provision did not require any portion to be served without benefits. Pullard entered an *Alford* plea in exchange for which the State dismissed two other charges. *Id.* Pullard was the victim's live-in caregiver, and her "actions and/or omissions contributed to the victim's malnourishment, cardiac arrhythmia, dehydration, urinary tract and kidney infection, and bedsores." *Pullard*, 56 So.3d at 1206. "[T]he State urged the trial court to impose the maximum sentence, asserting the evidence supported the contention that the victim died" as a result of Pullard's treatment of the victim. *Id* at 1207. Although Pullard had been previously arrested, she had no previous convictions. *Id.* In reviewing Pullard's excessive sentence claim, this court stated the following:

> In support of her argument that the maximum sentence is excessive, Defendant refers this court to *State v. Browhow*, 41,686 (La.App. 2 Cir. 12/13/06), 945 So.2d 890, asserting that the facts are similar to those of the instant case. We note, however, that the defendant in *Browhow* was convicted of the lesser offense, attempted cruelty to the infirm, and was sentenced to the maximum five years at hard labor. As such, the conviction and sentence are not analogous to the instant case for comparison purposes.
>
> Only a few reported cases involving a conviction for cruelty to the infirm were found in the jurisprudence. The facts of the cases reviewed involved either a professional caretaker working in such capacity or a relative that may or may not have been responsible for the victim's care. Although Defendant herein alleges she was not working for the victim in a professional capacity, she does not deny that she was his caregiver and had experience in caring for elderly patients as a certified nurse aide.
>
> The lengthiest sentence for a conviction of cruelty to the infirm was imposed in *State v. Echeverria*, 02–2592 (La.App. 1 Cir. 6/27/03), 858 So.2d 632, *writ denied*, 03–2332 (La.8/20/04), 882 So.2d 580. In *Echeverria*, the defendant, using both hands, pushed his eighty-four and one-half-year-old grandmother into the kitchen furniture. The victim reported that the defendant arrived at her home intoxicated and called her names before getting in her face and pushing her down. The victim suffered from soreness and bruises from the incident. Photographs of the victim introduced into evidence showed large bruises on the right side of her back and on her right hip. Following a bench trial, the defendant was convicted of cruelty to the

13

infirm and sentenced to five years at hard labor. After his adjudication as a third felony habitual offender, his sentence was vacated, and he was then sentenced to seven years at hard labor. On appeal, the court held that the sentence imposed was not unconstitutionally excessive or grossly disproportionate to the severity of the offense.

In *State v. Booker*, 42,596 (La.App. 2 Cir. 10/31/07), 968 So.2d 1190, *writ denied*, 07–2295 (La.4/25/08), 978 So.2d 364, the defendant was sentenced to three years at hard labor for cruelty to the infirm. The defendant was living with his ninety-five-year-old grandmother who was found home alone by emergency personnel dispatched to the home when she failed to answer the door. Upon forced entry, the victim was discovered sitting nude in her own waste with roaches crawling on her, unable to get up from her couch. She was then transported to a hospital and diagnosed with dehydration and malnutrition. Photos of the home introduced at trial depicted a home in deplorable condition. The defendant acknowledged to police at the scene and in his subsequent statement that he was the victim's caregiver. He paid the bills with the victim's money and was the only person living with the victim. Also, the defendant and the victim had no other family in the area. The defendant asserted he was doing the best he could and admitted that he needed some help caring for the victim. On appeal, the court noted that the sentence imposed was in the minimum range and concluded it was not excessive viewed in light of the harm done to society by cruelty to the aged and infirm.

In two cases, the defendants received suspended sentences. First, in *State v. Pratt*, 573 So.2d 607 (La.App. 2 Cir.1991), the defendant was convicted of three counts of cruelty to the infirm and was sentenced on each count to three years at hard labor, to be served concurrently. The sentences were suspended, and the defendant was placed on supervised probation for three years. The defendant was working at a nursing home as a nurse's aide where she physically assaulted three patients, repeatedly slapping and pinching them. The three female victims were ages seventy, eighty-four, and eighty-nine years old. The victims sustained bruising and/or swelling to their faces, and one victim was choked. Although the defendant had no prior felony convictions, the trial court found aggravating the fact that she denied the occurrences despite the testimony of co-workers who witnessed the abuse. Also, the defendant frequently used alcohol while on the job. Although there were no lasting physical injuries to the victims, the trial court concluded that the offenses were serious as they both threatened and caused serious harm. On appeal, the court did not find the sentences to be an abuse of the trial court's discretion.

Also, in *State v. Baker*, 41,325 (La.App. 2 Cir. 11/1/06), 942 So.2d 677, the defendant was convicted of cruelty to the infirm and sentenced to two years at hard labor, suspended, and was given three years of probation. Defendant was employed as a certified nurse aide

at an assisted living facility and nursing home for veterans. The victim became angry with the defendant when she tried to rouse him from his sleep. He also became upset with the defendant and then argued with her when she placed him in his wheelchair in a hard manner. During the argument, the victim had his hand in front of the defendant's face and called her a "black b——h." The defendant then grabbed the victim's hand and bent his fingers backwards. When the victim told the defendant to stop, she released his hand. The victim's hand was later found to be swollen and bruised. The defendant did not challenge her sentence on appeal.

Lastly, the shortest sentence imposed for cruelty to the infirm was found in *State v. Scott*, 582 So.2d 864 (La.App. 5 Cir.), *writ denied*, 584 So.2d 1171 (La.1991). The defendant in Scott was convicted of four counts of cruelty to the infirm and was sentenced to one year in parish prison on each count, the sentences to run consecutively, and fined $10,000, plus costs. The defendant worked at a home for mentally retarded individuals as an Assistant Home Manager. During his employ, two of the defendant's clients were found to have burns caused by an electric iron. Also, there was testimony that the defendant hit, pushed, and tied up some of his clients, in addition to physical evidence of injurious marks. The defendant did not challenge his sentences on appeal.

Defendant's sentence in the instant case, the maximum possible sentence, is twice that of the longest sentence imposed for cruelty to the infirm found in the jurisprudence. *Echeverria*, 858 So.2d 632. Only the enhanced sentence of seven years imposed in *Echeverria* compares to the maximum sentence imposed upon Defendant, a first felony offender.

*Id.* at 1209-11 (footnotes omitted).

The court in *Pullard* found the case to be significantly different from the cases wherein a lesser sentence had been imposed. First, *Pullard* involved the death of the victim. Second, as a certified nurse aide, Pullard clearly knew or should have known the victim was vulnerable or incapable of resistance due to his extreme age, disability, and ill health. *Id.* Third, Pullard had a significant monetary interest in her relationship with the victim, the abuse of which was wiped away by Pullard's plea agreement. *Id.* This court concluded its analysis by stating the following:

15

This is a severe sentence. However, it is clear to this court that the trial court did not impose it lightly. We are moved by the trial court's divulgence that this matter represents the first occasion wherein it has imposed a maximum sentence on a first time offender. Therefore, in light of the victim's death and the other aggravating factors identified by the trial court at sentencing, this court finds that the trial court did not abuse its discretion when it imposed the maximum sentence.

*Id.* at 1212.

*State's Argument in Brief*

The State asserts that the sentence imposed is not excessive:

The State asserts that this was a serious crime which resulted in permanent disfigurement to Mr. Rico. Not only did Gerrell Washington cruelly maim Ruddie Rico, he justified his actions behind the ridiculous notion that a 68 year old man, nowhere near his physical condition, would cause him sustained fear of life. Not only did Washington deliver such a severe punch to Mr. Rico that it caused him to lose his eyeball and several teeth, he also continued to kick and stomp on Mr. Rico until he caused other permanent damage. Washington did not stop even at the point where he rendered Mr. Rico unconscious. Before the sentence the defendant showed no remorse for the permanent disfigurement he caused to a veteran, he only disrespected the court even further by yelling obscenities as he was removed from the courtroom.[4] The State asserts that the proper analysis under La.Code of Criminal Procedure Article 894.1 was utilized by the Trial Court. These factors were all considered in the sentence imposed.

*Analysis*

Even though the sentence imposed in the present case is severe in comparison with other cases, the sentence is not so grossly disproportionate as to shock the sense of justice. Although the trial court imposed the maximum term of imprisonment, it is clear the trial court did not impose it lightly. Additionally, the trial court did not impose any fine even though it was permitted to do so by the penalty provision. *See* La.R.S. 14:93.3. As noted by the trial court, even though

---

[4] The record does not reflect the State's assertion that Defendant yelled obscenities at the court.

Defendant received the maximum sentence for both cruelty to a person with an infirmity and second degree battery, Defendant received concurrent sentences. This court has stated the following regarding a sentencing court's ability to impose consecutive sentences even when the offenses arose out of the same transaction:

> Considering the serious nature and violence used in the commission of the offenses, the trial court in its discretion could have reasonably imposed consecutive sentences for one or more of these offenses even though they constituted parts of a common scheme or plan. "Although Louisiana law favors concurrent sentences for crimes committed as part of a single transaction, La.C.Cr.P. art. 883; *State v. Underwood*, 353 So.2d 1013, 1019 (La.1977), a trial judge retains discretion to impose consecutive penalties on the basis of other factors, including the offender's past criminality, violence in the charged crimes, or the risk he or she poses to the general safety of the community. *State v. Williams*, 445 So.2d 1171, 1182 (La.1984); *State v. Jacobs*, 371 So.2d 727, 732–33 (La.1979) (on reh'g)." *State v. Thomas*, 98–1144, p. 1 (La.10/9/98), 719 So.2d 49, 49.

*State v. Bartie*, 12-673, p. 25 (La.App. 3 Cir. 12/5/12), 104 So.3d 735, 750, *writ denied*, 13-39 (La. 8/30/13), 120 So.3d 256. As discussed below, the imposition of consecutive sentences was within the trial court's discretion in the present case.

As stated by the trial court, the offense committed in the present case involved significant, permanent injuries to the victim. While Defendant argues that he hit the victim only once, the police investigation shows that the victim suffered a violent and sustained beating. The exhibits introduced at trial, including original photos of the injuries sustained by the victim, are not part of the appeal record. However, copies of those photos are attached to the probable cause affidavit. The photos show significant injuries sustained by the victim to his eye and hand. The record of the 911 emergency call from the incident, referencing injuries to the victim's eye and finger, is also attached to the probable cause affidavit. In the PSI, the victim stated Defendant caused him to lose his eye and caused his hand to be paralyzed. The victim also stated that his hand is wired

17

together, he has had back surgery, he has had memory and hearing loss, and he is responsible for reimbursing Medicare for his medical bills, which are estimated to be around two million dollars.[5]

Additionally, according to the PSI, Defendant is classified as a fourth-felony offender, with a lengthy criminal history:

- 4/19/1993 – Pled guilty to damage to property over $500.

- 7/14/1994 – Pled guilty to shoplifting.

- 1/27/1994 – Arrested and later pled guilty to possession of stolen property over $1000.

- 1/27/1994 – Arrested and later pled guilty to reckless operation of a vehicle.

- 2/3/1994 – Arrested and later pled guilty to simple criminal damage to property.

- 5/1/1995 – Pled guilty to aggravated battery.

- 5/1/1995 – Pled guilty to possession with the intent to distribute cocaine.

- 9/26/1995 – Arrested and later pled guilty to simple criminal damage to property.

- 6/12/1997 – Arrested and later pled guilty to enter/remain in places/on land after being forbidden.

- 6/15/1997 – Arrested and later pled guilty to misrepresentation during booking.

- 4/1/1999 – Pled guilty to armed robbery.

- 4/1/1999 – Pled guilty to manufacture/distribution of CDS II

- 7/19/2018 – Convicted of second degree battery (instant offense).

---

[5] Although the victim's injuries clearly required significant medical treatment, no mention of restitution was made in this case. Louisiana Code of Criminal Procedure Article 883.2 requires restitution to the victim to be ordered as part of a sentence when the court finds the victim suffered an actual pecuniary loss in connection with a criminal prosecution. Even though the trial court mentioned the victim's medical bills, it did not make a finding of actual pecuniary loss.

- 7/19/2018 – Convicted of cruelty to persons with infirmities (instant offense).

- 3/7/2018 – Pled guilty to public intimidation.

- 6/6/2018 – Arrested for battery of a correctional facility employee.

Of particular note is Defendant's history of violent offenses, including a previous conviction for aggravated battery in 1995 and a conviction for armed robbery in 1999. In June 2018, Defendant committed a battery on a correctional facility employee, which was still pending at the time of sentencing. Thus, Defendant's propensity for violence continued even after the current offense.

When the offense at issue occurred, Defendant was on a work release program, a time during which he should have been on his best behavior. Even considering Defendant's claim that he was provoked and in fear of a sixty-eight-year-old man, the extreme beating that Defendant inflicted upon the victim while on a work release assignment shows Defendant is a danger to society. Considering this fact along with Defendant's past criminal history, the trial court could have ordered the sentence imposed for cruelty to a person with an infirmity to run consecutively to the sentence imposed for second degree battery. Nonetheless, the trial court ordered Defendant's sentence for cruelty to a person with an infirmity to run concurrently with the sentence for second degree battery. Consequently, even though Defendant's sentences are the maximum for each crime, Defendant will actually be serving only one maximum sentence when he could be serving two.

Considering the extreme injuries suffered by the victim in the present case, Defendant's criminal history, Defendant's continued propensity for violence, and the trial court's order that the present sentence be served concurrently with the offense of second degree battery, we find that the sentence imposed for cruelty to a

19

person with an infirmity is not excessive. Additionally, the supreme court has repeatedly stated "that sentence review under the Louisiana constitution does not provide an appellate court with a vehicle for substituting its judgment for that of a trial judge as to what punishment is more appropriate in a given case." *State v. Savoy*, 11-1174, p. 5 (La. 7/2/12), 93 So.3d 1279, 1283 (citing *State v. Walker*, 00-3200 (La. 10/12/01), 799 So.2d 461; *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996); and *State v. Humphrey*, 445 So.2d 1155 (La.1984)).

For the foregoing reasons, we find that this assignment lacks merit.

### DECREE

Defendant's sentence is affirmed.

**AFFIRMED.**